IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02057-GPG-SBP

TODD RUELLE, an individual; SUMMIT COUNTY RESORT
HOMES INC., a Colorado nonprofit corporation;

    Plaintiff(s),

v.

SUMMIT COUNTY BOARD OF COUNTY
COMMISSIONERS; ELISABETH LAWRENCE, in her Official
Capacity as a Commissioner;
TAMARA POGUE, in her Official Capacity as a
Commissioner; and JOSHUA BLANCHARD, in
his Official Capacity as a Commissioner,

    Defendant(s).

_____

**DEFENDANTS' MOTION TO DISMISS**
_____

Summit County Board of County Commissioners (the "BOCC"), Elisabeth Lawrence, Tamara Pogue, and Joshua Blanchard (collectively "Defendants"), through counsel and pursuant to Fed. R. Civ. P. 12(b)(6), move to dismiss Plaintiffs' Complaint for Declaratory and Injunctive Relief ("Complaint") (Doc. 1) and state as follows:[1]

## INTRODUCTION

Grappling with the growing effects of a proliferation of short-term rentals, the Summit County Board of County Commissioners enacted a series of regulations and a licensing program

---

[1] **Certificate of Conferral:** Pursuant to D.C.Colo.LCivR 7.1(a) and this Court's Civil Practice Standards, counsel for Defendants has conferred with counsel for Plaintiffs who indicated that Plaintiffs oppose the requested relief.

governing residential owners who choose to rent their vacation properties in less than 30-day increments. Via Ordinance 20, the BOCC in 2021 added new enforcement, penalty, and revocation procedures to existing permit requirements for short-term rentals (STR) in the unincorporated portions of Summit County.[2] *See* Exhibit 1 to Complaint [Doc. 1-1]. Ordinance 20 noted that over the prior five or ten years, Summit County's short-term vacation rentals comprised 30% of its housing stock and that the conversion of formerly residential properties to short term vacation rentals had created a variety of effects upon neighborhoods and in the community such as increased noise, parking problems and lack of proper trash disposal. *Id.* at 1. The new program contemplated the expiration and renewal of such licenses on an annual basis. *Id*. at §§ 2.7 and 10.

Citing the continued increase in STRs, the continued housing crisis in the County and the disproportionate amount of citizen complaints over STR impacts from neighborhood areas, the BOCC a few months later enacted Ordinance 20-B, which added additional license types, crafted two overlay zones—the Resort Overlay Zone and the Neighborhood Overlay Zone ("NOZ"), and created limits on the total amount of nightly STR rentals for certain license types in the NOZ. [Doc. 1-2 at §§ 1.1 and 3.2.]

The BOCC strengthened its STR regulations on February 15, 2023 by approving Ordinance 20-C, citing the same trends of decreasing housing stock, increasing STRs and citizen complaints from STR operations in the NOZ areas. [Doc. 1-3.] Ordinance 20-C maintained multiple license types for the NOZ area, but narrowed the license types down to two from three as follows:

---

[2] Although not reflected in Plaintiffs' Complaint, the County had crafted and enacted regulations for short term rentals in 2019. Ordinance 20 incorporated many of the existing regulations.

2

- A Type I license for a STR property requires a member of the local workforce (a "Qualified Occupant" as further defined in the ordinance) to live at the property at least nine months of the year. That license allows the resident host to partially rent out a portion of his or her residence or to live in an accessory dwelling unit on the property. *Id*. at § 3.2(a). While the property owner must be the licensee, the property owner need not be the on-site resident host.
- A Type II license does not require a local workforce resident. A Type II license is subject to a specific cap on the number of Type II licenses for each of the four land use basins that comprise Summit County. *Id*. at § 3.2(b).

Both license types are now subject to a 35 booking-per-year limitation. *Id*. at §§ 3.2(a)(v) and 3.2(b)(ii). The ordinance contains no minimum or maximum day requirement for a booking. Pre-existing NOZ licensees generally will automatically convert to Type II licenses upon renewal in 2023. *Id.* at §§ 14.1(a), 14.2(a)-(c).

Plaintiffs consist of a homeowner in Summit County and a non-profit purportedly with a membership of property owners who rent or desire to rent STRs in Summit County that are subject to the current restrictions of Ordinance 20-C. They assert a total of nine counts for declaratory and or injunctive relief under federal and state law. Their first four claims seek relief under 42 U.S.C. § 1983--claiming violations under the Equal Protection Clause, the substantive component of the Due Process Clause and the dormant Commerce Clause. This Motion challenges the viability of these federal claims under F.R.C.P. 12(b)(6) and urges the Court to decline supplemental jurisdiction over Plaintiffs' remaining state law claims.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true and interpreted in the light most favorable to the non-moving party, to state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The complaint must allege sufficient facts to establish all the elements of each theory of relief; a claim may be dismissed if it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).

## ARGUMENT

**I.  Equal Protection (First and Second Claims for Relief)**

Plaintiffs' First and Second Claims for Relief assert violations of the Fourteenth Amendment's guarantee of equal protection. The essence of equal protection "is that the state treat all those similarly situated similarly, with its central purpose being the prevention of official conduct discriminating on the basis of race or other suspect classifications. As such, equal

protection only applies when the state treats two groups, or individuals, differently." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) (alterations, internal quotations, citations omitted).

To analyze an equal protection claim challenging legislative action, "courts begin by determining the proper level of scrutiny to apply … [and] first ask whether the government action implicates a fundamental right." *Valdez v. Grisham*, No. 21-2105, 2022 WL 2129071, at *4 (10th Cir. June 14, 2022). Courts "apply strict scrutiny to a government action that targets a suspect class or involves a fundamental right." *Id*. (quoting *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002) (internal quotation and alterations omitted). Otherwise, courts apply rational-basis review. *Id*.  A fundamental right or liberty interest is one that is "deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *Seegmiller v. LaVerkin City,* 528 F.3d 762, 757 (10th Cir. 2008).

Plaintiffs do not maintain that they are members of any protected class. Nor could they. *Abshire v. Newsom*, No. 2:21-cv-00198-JAM-KJN, 2021 WL 3418678, at *6 (E.D. Cal. Aug. 5, 2021), *aff'd*, No. 21-16442, 2023 WL 3243999 (9th Cir. May 4, 2023) ("Nor are the owners of hotels, lodgings, short-term rentals, and restaurants a suspect class.").

Plaintiffs allege that they have a fundamental right to lease their property for whatever length of time they prefer, because "[a]t bottom, the right to own and rent property is a fundamental right under the United States and Colorado Constitutions." [Doc. 1 at ¶ 189.] But to the contrary, "federal courts have concluded uniformly that the right to dispose of one's property is not fundamental for equal protection purposes." *211 Eighth, LLC v. Town of Carbondale*, 922 F. Supp. 2d 1174, 1180 (D. Colo. 2013) (collecting cases). *See Selvaggi v. Borough of Point Pleasant Beach*, No. CV 22-00708 (FLW), 2022 WL 1664623, at *5 (D.N.J. May 25, 2022) ("the unilateral

5

and unconditional 'right to use property,' such as the right to rent a property, is not supported by case law. A nationwide survey demonstrates that there is no such fundamental right.") (collecting cases); *Mogan v. City of Chicago*, No. 21 C 1846, 2022 WL 159732, at *16 (N.D. Ill. Jan. 18, 2022) ("[Plaintiff]'s ability to rent the Unit on home sharing websites is not a fundamental right."). The Tenth Circuit has yet to recognize any such right, and has suggested that governmental limitations on the use of property do not implicate a fundamental right. *Lehman v. City of Louisville*, 967 F.2d 1474, 1476 n.2 (10th Cir. 1992) (noting that the property interest to a proposed use of property bore "little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution.") (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring).[3]

Thus, rational-basis review applies. Under this standard, "[s]ocial and economic legislation is presumed to be rational and this presumption 'can only be overcome by a clear showing of arbitrariness and irrationality.'" *Coal. for Equal Rts., Inc. v. Owens*, 458 F. Supp. 2d 1251, 1258 (D. Colo. 2006), *aff'd sub nom. Coal. for Equal Rts., Inc. v. Ritter*, 517 F.3d 1195 (10th Cir. 2008) (quoting *Hodel v. Indiana,* 452 U.S. 314, 331-32 (1981)). Accordingly, "when legislative judgment is called into question on equal protection grounds and the issue is debatable, the decision of the legislature must be upheld if any state of facts either known or which could reasonably be assumed affords support for it. Second-guessing by a court is not allowed." *Powers*, 379 F.3d at 1216-17 (quotation omitted). Rational basis review does not give courts the option to speculate whether a

---

[3] To the extent Plaintiffs base their allegedly fundamental right upon the Colorado Constitution, that also fails as a matter of law. Fundamental rights (in the related substantive due process context) cannot be based upon state law but are sourced in deeply rooted notions of fundamental personal interests derived from the United States Constitution. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998).

different regulatory scheme could have better regulated the evils in question or strike down a law simply because it may not succeed in the result in seeks to address or its classifications lack precision or are not based upon sound empirical data. *Id.*

Ordinance 20-C satisfies rational-basis review. Plaintiffs allege in conclusory fashion that "[t]he STR regulatory framework … does not advance a legitimate governmental interest," but they are incorrect as a matter of law. As one court summarized over three decades ago:

> …the highest courts of this state and of the land [have] recognized that maintenance of the character of residential neighborhoods is a proper purpose of zoning… It stands to reason that the "residential character" of a neighborhood is threatened when a significant number of homes… are occupied not by permanent residents but by a stream of tenants staying a weekend, a week, or even 29 days. Whether or not transient rentals have the other "unmitigatable, adverse impacts" cited by the Council, such rentals undoubtedly affect the essential character of a neighborhood and the stability of a community. Short-term tenants have little interest in public agencies or in the welfare of the citizenry. They do not participate in local government, coach little league, or join the hospital guild. They do not lead a Scout troop, volunteer at the library, or keep an eye on an elderly neighbor. Literally, they are here today and gone tomorrow—without engaging in the sort of activities that weld and strengthen a community.

*Ewing v. City of Carmel-By-The-Sea*, 234 Cal. App. 3d 1579, 1590–91 (Ct. App. 1991); *see Short Term Rental All. of San Diego v. City of San Diego*, No. 22-cv-1831-L-BGS, 2023 WL 3964059, at *12 (S.D. Cal. June 12, 2023) ("the stated purposes of the Ordinance, preservation of existing housing inventory and quality of neighborhood life, are legitimate government purposes."); *Short Term Rental Owners Ass'n of Georgia, Inc. v. Cooper*, 515 F. Supp. 3d 1331, 1347 (N.D. Ga. 2021), *aff'd sub nom. Heyman v. Cooper*, 31 F.4th 1315 (11th Cir. 2022) ("as the Eleventh Circuit and other federal courts interpreting similar ordinances have held, the Short-term Rental Ordinance is a rational and reasonable means to accomplish enhancing and maintaining the residential

character of the community by cutting down on traffic and protecting surrounding property values.").

While Plaintiffs repeatedly allege that the legislative classifications for Overlay Zones and Qualified Occupants "are arbitrary and irrational," (Doc. 1 at ¶ 198; *id*. at ¶¶ 85, 162, 206), their factual allegations undercut such conclusions (which are, in any event, not entitled to the presumption of truth). Plaintiffs concede that Defendants took public comment, held public hearings, engaged in factfinding, and based new regulations on that process. *See generally id*. at ¶¶ 42-77. Here, the legislative findings regarding complaints over STRs in neighborhood areas, and the loss of housing stock, provide a rational basis for distinguishing between the tourist-oriented areas around the ski resorts of Summit County and neighborhood areas, and creating more restrictions for STRs in neighborhood areas. Limiting STR conversions in the neighborhood areas reasonably targets areas that are the most conducive to long-term housing and rentals that can serve its local workforce while at the same time encouraging STR uses close to resort areas (and attendant tourist infrastructure like public transportation).

The same holds true for the Qualified Occupant requirement. This option for a Type I license encourages housing opportunities for the County's local workforce while balancing out the increase in STR conversions. Accordingly, as the cases cited above show, these regulations are rationally related to the legitimate goals of preserving neighborhood life and local housing. *See Nekrilov v. City of Jersey City*, 45 F.4th 662, 681 (3d Cir. 2022) (upholding STR regulations under rational basis review where "the face of the ordinance articulates the very state interests that the ordinance furthers.")

8

As a matter of law, the allegations in the Complaint cannot meet Plaintiffs' burden to establish that Summit County's STR regulations have no rational basis. As a result, their equal protection claims must be dismissed.

## II.   Substantive Due Process (Fourth and Fifth Claims for Relief)

Although substantive due process and equal protection are distinct doctrines, the "substantive analyses" of the two often "converge." *Powers*, 379 F.3d at 1215. As with equal protection, the Fourteenth Amendment's due process clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg,* 521 U.S. 702, 719 (1997). The substantive due process standards under the United States and Colorado Constitutions are identical. *People v. Smith*, 848 P.2d 365, 368–69 (Colo. 1993). "Absent the presence of a fundamental constitutional right, legislation that bears a rational relationship to a legitimate governmental interest will survive challenges based on the substantive due process clauses of the United States and Colorado Constitutions." *People v. Zinn,* 843 P.2d 1351, 1353 (Colo. 1993).

As discussed above, Plaintiffs cannot establish a fundamental right that supports their demand for strict scrutiny. To decide if a right is fundamental for Fourteenth Amendment purposes, "the Court has long asked whether the right is 'deeply rooted in [our] history and tradition' and whether it is essential to our Nation's 'scheme of ordered liberty.'" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2246 (2022) (quoting *Timbs v. Indiana*, 139 S. Ct. 682, 686 (2019)). Plaintiffs must provide "a 'careful description' of the asserted fundamental liberty interest;" "vague generalities ... will not suffice." *Chavez v. Martinez*, 538 U.S. 760, 775–76 (2003). The Complaint here does not offer a sufficiently "careful description" of the fundamental

liberty interests Plaintiffs allege have been violated, nor describe how their desire for short-term rentals meets the criteria or is analogous to rights recognized as fundamental, such as the rights to marry or to privacy and contraception. [*See* Doc. 1 at ¶ 226 (alleging only a "fundamental right to rent private property").][4] Absent a fundamental right, only rational basis applies.

The "rationality review for due process challenges is the same as that for equal protection challenges." *Coal. for Equal Rts.*, 458 F. Supp. 2d at 1263 (citing *Allright Colorado, Inc. v. City and County of Denver,* 937 F.2d 1502, 1511–1512 (10th Cir. 1991) ("Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them.") (internal citations omitted.) Plaintiffs make no allegations (nor could they) that the challenged regulations are totally unrelated to Summit County's stated goals. Instead, they allege only that "there is no rational basis for" the cap on bookings, and that the cap "does not result in increased affordable housing for the local workforce nor a decrease in the likelihood of neighbor complaints." [Doc. 1 at ¶ 231.] This does not suffice: courts "will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, or because the statute's classifications lack razor-sharp precision,… [or] on the basis that no empirical evidence supports the assumptions underlying the legislative choice." *Powers*, 379 F.3d at 1217.  Moreover, capping the number of bookings for licensed STR's in neighborhood zones provides some reasonable, yet a flexible limitation on STR

---

[4] The Complaint cites *Terrace v. Thompson*, 263 U.S. 197 (1923) for the proposition that "property rights in land include …the right to lease it." [Doc. 1 at ¶ 225.] But *Terrace* does not discuss fundamental rights, much less establish a fundamental right to rent. Notably, the Court in *Terrace* applied rational basis review to uphold a state law forbidding noncitizens from owning land, despite acknowledging that under the immigration laws of the time, "the natives of European countries are eligible. Japanese, Chinese and Malays are not." 263 U.S. at 220.

usage of a property that can be reasonably enforced by county staff. That limitation on STR use is a reasonably conceivable method of lessening the impact of STR use in neighborhoods and reducing neighborhood conflicts by insuring that an STR in the NOV does not approach hotel or motel usage. *See Nekrilov v. City of Jersey City*, 45 F.4th at 680-681 (rejecting substantive due process challenge to municipal ordinance which contained a total nightly rental limitation on short term rentals.)

In short, "[s]ubstantive due process is not a blanket protection against unjustifiable interferences with property. And it does not confer on federal courts a license to act as zoning boards of appeals." *Gen. Auto Serv. Station v. City of Chicago,* 526 F.3d 991, 1000 (7th Cir. 2008) (internal citations and quotations omitted). For the same reasons that Plaintiffs' Equal Protection claims fail to overcome a rational basis review, so does their substantive due process challenge since it proceeds along the same analysis. *Powers*, 379 F.3d at 1215. Plaintiffs cannot plausibly state any violation of substantive due process, and those claims should be dismissed.

### III.     Dormant Commerce Clause (Third Claim for Relief)

Plaintiffs' Third Claim for Relief alleges that Ordinance 20-C violates the dormant commerce clause because "[o]nly in-state residents can be Qualified Occupants … Thus, out-of-state residents, as compared to in-state Qualified Occupants, are ineligible to get a license to operate STRs in the NOZ." [Doc. #1 at ¶ 213.] This claim rests on Plaintiffs' misreading of the Ordinance and their corresponding misapplication of caselaw.

The "dormant Commerce Clause" limits state legislation which adversely affects interstate commerce. *See Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979). The focus of a dormant Commerce

Clause challenge is whether a state law improperly interferes with interstate commerce. *Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1135 (10th Cir. 2016); *see W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 192 (1994) ("This negative aspect of the Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.") (internal citations omitted). Facing such a challenge, ordinances that "regulate even-handedly to effectuate a legitimate local public interest ... will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2091 (2018) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)); *see also Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169, 1171 (10th Cir. 2015) (Gorsuch, J.) (observing that "[b]y any reckoning, that's a pretty grand, even 'ineffable,' all-things-considered sort of test, one requiring judges (to attempt) to compare wholly incommensurable goods for wholly different populations (measuring the burdens on out-of-staters against the benefits to in-staters).").

Here, the Court need not engage in any such balancing of interests because, contrary to Plaintiffs' allegations, the Ordinance does not forbid out-of-state residents from obtaining a Type I STR license.[5] Instead, as discussed above (and as plainly stated in the text of Ordinance 20-C), a Qualified Occupant need not be the property owner. [*See* Doc. 1-3 at § 1.1(d) (defining Qualified Occupant as "a person 18 years of age or older … who at all times during his ownership *or occupancy* of the Unit, resides and is employed within the County year round."); *id*. at § 6(l)(iv)

---

[5] The Court may consider the text of the Ordinance in ruling on a motion to dismiss because Plaintiffs attached the Ordinance to their Complaint and the Ordinance is a matter of public record subject to judicial notice. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

12

(application for a Type I lease should include "[c]opy of a lease to Qualified Occupant, if applicable").] This permits out-of-state property owners to rent to, or otherwise contract with, a County resident who can serve as a Qualified Occupant for purposes of a Type I license. *See id*. at § 3.2(a).

This distinguishes the allegations here from the circumstances of the cases cited in Plaintiffs' Complaint. In both *Hignell-Stark v. City of New Orleans*, 46 F. 4th 317, 328–29 (5th Cir. 2022) and *South Lake Tahoe Prop. Owners Group v. City of South Lake Tahoe*, 310 Cal. Rptr. 3d 9 (Cal. Dist. Ct. App. 2023), courts found that STR regulations violated the dormant Commerce Clause where they required the owner to live at the property to obtain an STR license. As the *Hignell* court noted, such a requirement "doesn't just make it more difficult for [out-of-state owners] to compete in the market for STRs in residential neighborhoods; it forbids them from participating altogether… [t]he upshot is that only residents of the City may enter the market for STRs in residential neighborhoods." *Hignell*, 46 F.4th at 326. The ordinance at issue in *South Lake Tahoe Property Owners* banned STRs in residential areas but contained an exception that "allowed only owners who resided in their residential properties to enter the market for short-term rentals in residential neighborhoods." *S. Lake Tahoe Prop. Owners Grp.*, 92 Cal. Rptr. 3d at 34. Since both ordinances completely excluded out-of-state property owners from the STR market, these courts found that they discriminated against interstate commerce.

But this case is more like *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 450 (9th Cir. 2019), where the ordinance at issue "prohibit[ed] property rentals of 30 days or less (vacation rentals) with an exception for rentals where a primary resident remained in the dwelling[.]" *Id*. at 451. There, as here, the plaintiff argued "that the ordinance discriminates against interstate

13

commerce because it 'contains an unconstitutional residency requirement allowing only Santa Monica residents to engage in short-term rentals.'" *Id*. at 450. But the *Rosenblatt* court recognized that, "[c]ontrary to [plaintiff]'s characterization, the ordinance does not require the *primary resident* in the dwelling to be the *owner* of the dwelling." *Id*. (emphasis added). Because an out-of-state owner could arrange for someone else to serve as the primary resident (such as a long-term local tenant), "the complaint does not plausibly allege that the ordinance directly regulates or burdens interstate commerce." *Id.* at 451.

Likewise, in *Short Term Rental Alliance of San Diego*, the court distinguished *Hignell* and found *Rosenblatt* controlling because the ordinance at issue did "not target *owners*, whether they occupy the rental property or not. Instead, it distinguishe[d] between short-term rentals based on whether they are occupied by a *host*." 2023 WL 3964059, at *7 (emphasis original). Because "the Ordinance [did] not require that the property owner act as the host," there was no additional burden to out-of-state property owners and the plaintiff had "not alleged that the Ordinance on its face violates the dormant Commerce Clause." *Id*. at *8.

So too here, where Ordinance 20-C requires a resident *host*, not a resident *owner*. Because Plaintiffs cannot show that the Ordinance creates a burden on interstate commerce, their dormant Commerce Clause claim fails as a matter of law.

### IV. Continued Nonconforming Use under Colorado Law (Sixth, Seventh, Eighth, and Ninth Claims for Relief)

As discussed above, all of Plaintiffs' federal law claims—over which this Court has original subject-matter jurisdiction pursuant to 28 U.S.C. § 1331—are subject to dismissal. Plaintiffs' remaining claims are brought under state law, which implicates this Court's supplemental subject-matter jurisdiction under 28 U.S.C. § 1367. Under 28 U.S.C. § 1367(c)(3),

when all the "federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998). Accordingly, this Court should dismiss the remaining state-law claims (Plaintiffs' sixth through ninth claims for relief) without prejudice for lack of subject-matter jurisdiction and remand these state-law claims back to state court.

WHEREFORE, Defendants Summit County Board of County Commissioners, Elisabeth Lawrence, Tamara Pogue, and Joshua Blanchard respectfully request that the Court dismiss the Plaintiffs' First through Fifth claims in Plaintiffs' Complaint in its entirety, with prejudice, and dismiss all remaining claims without prejudice and order any other necessary and proper relief.

Respectfully submitted this 27th day of September 2023.

BERG HILL GREENLEAF RUSCITTI LLP

*s/ Josh A. Marks*

_____
Josh A. Marks
1712 Pearl Street
Boulder, CO  80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601
Email:  jam@bhgrlaw.com


And


SUMMIT COUNTY ATTORNEY'S OFFICE

*s/ Jeffrey Huntley*

_____
Jeffrey Huntley
Summit County Attorney
P.O. Box 68
Breckenridge, CO  80424
Phone:  (970) 668-4073
Fax:  (970) 668-4255
Email: jeffrey.huntley@summitcountyco.gov


*s/ Keely Ambrose*

_____
Keely Ambrose
Summit County Deputy Attorney
P.O. Box 68
Breckenridge, CO  80424
Phone:  (970) 668-4073
Fax:  (970) 668-4255
keely.ambrose@summitcountyco.gov

*Attorney for Defendants*
*Summit County Board of County Commissioners, Elisabeth Lawrence, Tamara Pogue, and Joshua Blanchard*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September 2023, I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification to such filing to the following e-mail addresses,

| | |
|---|---|
| Matthew C. Arentsen | Jeffrey Huntley |
| Rosa L. Baum | Keely Ambrose |
| Wayne F. Forman | Summit county Attorney's Office |
| Justin L. Cohen | P.O. Box 68 |
| Brownstein Hyatt Farber Schreck, LLP | Breckenridge, CO  80424 |
| 675 15th Street, Suite 2900 | jeffrey.huntley@summitcountyco.gov |
| Denver, CO  80202 | keely.ambrose@summitcountyco.gov |
| marentsen@bhfs.com | |
| rbaum@bhfs.com | |
| wforman@bhfs.com | |
| jcohen@bhfs.com | |

*s/ Cheryl Stasiak*
_____
Cheryl Stasiak