IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:23-cv-02057-GPG-SBP**

TODD RUELLE, an individual;
SUMMIT COUNTY RESORT HOMES INC., a Colorado nonprofit corporation,

    Plaintiffs,

v.

SUMMIT COUNTY BOARD OF COUNTY COMMISSIONERS;
ELISABETH LAWRENCE, in her Official Capacity as a Commissioner;
TAMARA POGUE, in her Official Capacity as a Commissioner; and
JOSHUA BLANCHARD, in his Official Capacity as a Commissioner;

    Defendants.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Todd Ruelle and Summit County Resort Homes Inc. ("Plaintiffs"), through their counsel, respectfully respond to Defendants' Motion to Dismiss (ECF No. 21).

## INTRODUCTION

Defendants seek rubber-stamp review and approval of their blunderbuss short-term rental regulations. But the Constitution affords property owners more protection than that. Across a more than 40-page complaint, Plaintiffs lay out detailed factual allegations describing why Summit County's regulations that limit or prohibit short-term rentals ("STRs") *at only some* residential properties are irrational and arbitrary. From stripping seniors of retirement income to putting locals out of their homes to discriminating against out-of-state owners, the STR regulations violate property owners' federal and state law rights. Providing examples and granular details, Plaintiffs explain that the neighborhoods where the County allows unfettered STRs and those where it restricts them have no relevant differences. Plaintiffs' allegations—which must be accepted as true—make out plausible violations of the Equal Protection Clause, substantive due process, and the dormant Commerce Clause. That is enough for the claims to survive dismissal.

In 2021, the County instituted a licensing scheme for STRs for the first time. Just two months after the transition from STR permits to licenses under Ordinance 20, the County introduced another set of more stringent STR regulations: Ordinance 20-B. This ordinance created two "Overlay Zones" that irrationally and arbitrarily distinguish between areas in the County that Defendants claim are "resort areas" versus those that are "neighborhood areas." Where a property is located—the Resort Overlay Zone ("ROZ") versus the Neighborhood Overlay Zone ("NOZ")—dictates the STR rules that apply. Ordinance 20-C [Dkt. 1-3], the culmination of the County's rapid-fire accumulation of restrictions on property owners' rights, sets strict limits on the number

1

of STR licenses available and bookings allowed for "NOZ" properties. The ordinance imposes no such limits on "ROZ" properties. The fabricated overlay zones are distinctions without a relevant difference—and the Complaint contains scores of detailed allegations backing this up.

On Defendants' Rule 12(b)(6) motion to dismiss, the Court must accept Plaintiffs' factual allegations as true and view them in the light most favorable to Plaintiffs. Defendants recite this standard but disregard it in challenging Plaintiffs' equal protection and due process claims, arguing facts contrary to the Complaint's well-pleaded allegations. Defendants then urge the Court to adopt anemic rational basis standards to sweep away those claims. For the dormant Commerce Clause claim, Defendants would have this Court ignore the STR regulations' plain language while adding provisions that do not exist. Then, according to Defendants, the Court can disregard Supreme Court precedent to summarily dismiss the claim. Defendants are wrong on all fronts.

The County's line-drawing between STR haves (ROZ property owners) and have-nots (NOZ property owners) is irrational, arbitrary, and discriminates against out-of-state residents. Plaintiffs have offered more than mere labels and conclusions to support their claims; they have made detailed factual allegations that state plausible claims for relief. The Court thus should deny Defendants motion to dismiss and allow the case to proceed to discovery.

**STANDARD OF REVIEW**

On a motion to dismiss for failure to state a claim, the court "accepts as true all well-pleaded factual allegations in a complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF R.R. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018). Dismissal is a "harsh remedy," and can be granted only if "it appears to a certainty that plaintiff is entitled to no relief under any state of facts." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

2

## ARGUMENT

**I.      The Complaint Alleges Plausible Equal Protection Violations (Claims 1 & 2).**

The County, contradicting Plaintiffs' well-pleaded allegations and relying solely on the legislative findings of the STR regulations attached to the Complaint, argues that the STR regulations pass the rational basis test. But the Complaint explicitly challenges those findings and presents specific facts that undermine them. An appropriate application of the rational basis test requires that Plaintiffs be allowed to prove these allegations and present evidence that the STR regulations irrationally discriminate between similarly situated homeowners.

**A.      Rational basis review is not a rubber-stamp to dismiss equal protection claims at the pleading stage.**

While Plaintiffs' equal protection claims are subject to rational basis review, the Court should "not rubber-stamp state officials' rationales to justify challenged statutes." *Baker v. City of Concord*, 916 F.2d 744, 749 (1st Cir. 1990). Rational basis review requires more. "The government violates the Equal Protection Clause when it treats someone differently than another who is similarly situated without a rational basis *for the disparate treatment*." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031 (10th Cir. 2007) (emphasis added and cleaned up). The test focuses not on whether the regulation itself is rational, but on whether the regulation treating similarly situated persons *differently* is rational. Also, "[t]he fact that it may be rational or beneficent to spare some the burden of [regulation] does not mean that the beneficence can be distributed arbitrarily." *Williams v. Vermont*, 472 U.S. 14, 27 (1985).

Plaintiffs thus must establish (1) "others similarly situated in all material respects were treated differently" and (2) "that there is no objectively reasonable basis for [Defendants'] action."

3

*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1217 (10th Cir. 2011) (cleaned up).[1] Of course, Plaintiffs need not prove these elements at the start through their Complaint. To survive the motion to dismiss, Plaintiffs need only plead facts that—when accepted as true—establish a plausible equal protection claim. *See, e.g.*, *Calvey v. Town Bd. of N. Elba*, 2021 WL 1146283, at *7 (N.D.N.Y. Mar. 25, 2021) (holding the "allegations make plausible Plaintiffs' claim that the short-term rental law creates distinctions between similarly situated owners of short-term rental property without a rational basis," and "such factual allegations are sufficient"). Plaintiffs have done that.

    **B.**    **Plaintiffs sufficiently allege facts showing unequal treatment of materially similar property owners in the County.**

The Complaint plausibly alleges that property owners in the NOZ and ROZ are similarly situated in all relevant ways but treated differently under the STR regulations (Claim 1). The Complaint also plausibly alleges that NOZ property owners who retire before obtaining a Type I license are materially no different than NOZ property owners who retire after obtaining a Type I, but current retirees are not allowed to get a Type I license (Claim 2). Defendants make no serious effort to dispute that Plaintiffs have adequately alleged these persons are similarly situated yet treated differently. Nor could they, as the Complaint contains dozens of detailed allegations establishing the County's unequal treatment of these similar individuals.

    **1.**    **The Complaint adequately alleges that the STR regulations arbitrarily distinguish between similar ROZ and NOZ property owners.**

---

[1] "The pleading requirement of an allegation that a similarly situated person was treated differently applies both when the plaintiff challenges a government action that discriminates based on membership in a non-protected class . . . or membership in a 'class of one.'" *Brown v. Montoya*, 662 F.3d 1152, 1173 (10th Cir. 2011). Also, Tenth Circuit "[c]ourts do not inquire into the government actor's actual motivations" and do not require a plaintiff to allege or prove animus. *Gotovac v. Trejo*, 495 F. Supp. 3d 1186, 1215 n.11 (D.N.M. 2020), *aff'd*, 2021 WL 4891621 (10th Cir. Oct. 20, 2021).

The STR regulations put County properties into one of two zones: the ROZ or the NOZ. Ordinance 20-C, §§ 3.1, 3.2. Despite the zones' assigned names, they share the same composition, Compl. ¶ 152, amenities, *id.* ¶ 152, access to recreation, *id.* ¶¶ 153, 154, density, *id.* ¶¶ 155, 159, infrastructure, *id.* ¶ 158, and housing stock, *id.* ¶ 161. So similar are the zones that Colorado law treats them the same under its zoning regulations. *Id.* ¶ 157. Accepting these allegations as true for this motion, property owners in the ROZ are similarly situated to those in the NOZ for all relevant purposes. *See id.* ¶¶ 64, 65, 150–162.

Despite this similarity, the STR regulations subject homes in the ROZ and NOZ to vastly different treatment—choosing STR haves and have nots.

- Homeowners in the ROZ can STR their home if they apply for a "Resort License," which is freely given and has no booking limitations. Ordinance 20-C, § 3.1.

- Homeowners in the NOZ are subject to a harsher regime. NOZ homeowners without STR licenses cannot obtain a license that would allow them to rent STR unless they are a local homeowner who meets stringent work requirements, Ordinance 20-C, §§ 1.1(d), 3.2(a) (a "Type I" license). Everyone else in the NOZ who does not already have a license must wait to obtain a license to rent STR, which will not be available for years, if ever, Ordinance 20-C, § 1.1(d), 3.2(b) (a "Type II" license"); Compl. ¶¶ 89–93. Even if a NOZ homeowner has a Type I or a Type II license that would allow them to rent STR, they are subject to a limit of 35 bookings per year. Compl. ¶ 119; Ordinance 20-C, §§ 3.2(a)(v), 3.2(b)(ii).

The Complaint therefore alleges facts plausibly establishing that the County's ROZ versus NOZ STR scheme treats similarly situated property owners differently.

2. **The STR regulations arbitrarily distinguish between similar retirees.**

The Complaint plausibly alleges that the STR regulations impose different treatment on similarly situated retirees. A local homeowner who meets certain work requirements "may be authorized to retire" and keep their NOZ Type I license. Ordinance 20-C, § 1.1(d)(ii). But for homeowners who have already retired, the STR regulations provide no avenue to a Type I license.

5

Ordinance 20-C, § 1.1; Compl. ¶ 84. Instead, the retiree would need to try to obtain a Type II license, but they would not be able to get such for years if ever. Compl. ¶¶ 89–93. This arbitrarily distinguishes between those who already retired and those who retire in the future.

Take Greg Gutzki, who has lived and worked in the County for four decades before retiring. Compl. ¶¶ 95–96. He wants but cannot get an STR license for his NOZ home. *Id.* ¶¶ 97–99. If he had obtained a Type I license before he retired, he could seek "authoriz[ation] to retire" and keep the license. Ordinance 20-C, § 1.1(d)(ii). But because Mr. Gutzki is *already* retired, he cannot get a Type I license. Ordinance 20-C, § 1.1(d)(ii); *see* Compl. ¶¶ 99–101. So he, and other retirees like him, are treated differently from similarly situated retirees who have a Type I license.

### C. The Complaint plausibly alleges that distinctions in the STR regulations are not rationally related to a legitimate government interest.

Because the STR regulations discriminate between similarly situated persons, they violate the Equal Protection Clause unless the discrimination itself is rationally related to a legitimate interest. The County's argument that the STR regulations generally serve some legitimate interests is not enough for dismissal. A discriminatory law is constitutional only if the "classification *itself* is rationally related to a legitimate governmental interest." *U.S. Dep't of Agric. V. Moreno*, 413 U.S. 528, 533 (1973) (emphasis added). So the ROZ versus NOZ and the previously-retired versus to-be-retired distinctions need to rationally relate to the County's interests. But based on the Complaint, they do not. And when Plaintiffs' allegations are accepted as true, Defendants offer nothing justifying how those classifications themselves advance any state interest.

Courts strike down irrational distinctions even when the regulation advances a government interest. For example, in *Williams v. Vermont*, the Supreme Court reviewed a state law that would provide tax credits to those who bought a car out of state, but only if they were a Vermont resident

6

at the time they bought the car. 472 U.S. 14, 15 (1985). Someone who bought a car before becoming a Vermont resident challenged the law on equal protection grounds. *Id*. at 16. Vermont argued that the law survived rational basis review because giving tax credits for foreign cars was rationally related to the state's interest in encouraging interstate commerce. *Id*. at 26. The Court agreed that a tax credit generally advanced this interest, *id*. at 27, but that was not enough to survive an equal protection challenge. Instead, Vermont had to show that the law's distinction—between those who bought their cars before gaining residency and those who bought their cars after gaining residency—*itself* advanced the state's interest. Because discrimination based on residency date did not itself rationally relate to a state interest, the law failed rational basis review. *Id.* at 27.

Defendants assert several rationales to justify the STR regulations, such as preserving neighborhood character and housing stock, all of which the Complaint challenges. Compl. ¶¶ 137–188. But the disparate treatment alleged in the Complaint serve none of these. "The purposes of the statute would be identically served, and with an identical burden," by limiting STRs in both the NOZ and ROZ and among all retirees. *Williams*, 472 U.S. at 24. Thus, like in *Williams*, "[t]he distinction between them bears no relation to the statutory purpose." *Id.* at 24. While the County's goals of preserving neighborhood character and housing stock arguably support limiting STRs, there is no rational reason—when Plaintiffs' allegations are accepted as true—to spare some property owners an equal burden. *See id.* at 25–26; *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 449–50 (1985) (a home being too big is not a logical basis for permit denial when identical homes were routinely granted permits). "To free one group and not the other from" the STR limitations "violates the Equal Protection Clause." *Williams*, 472 U.S. at 27.

*Williams* is not an aberration. Since *Williams*, courts have invalidated laws on rational basis

7

review when the purposes of the law could have been similarly served without the challenged classifications. *See, e.g.*, *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1033–34 (10th Cir. 2007) (holding that the classification in a state law were not themselves related to the government's purpose); *Timlim v. Myers*, 980 F. Supp. 1100, 1103–05 (C.D. Cal. 1997) (invalidating state law that distinguished between judges who accepted positions in the public sector versus those who accepted positions in the private sector for no rational basis).

Indeed, a federal district court recently denied a motion to dismiss claims challenging very similar STR regulations. In *Calvey v. Town Bd. of N. Elba*, like Plaintiffs here, the property owners challenged regulations that prohibited them from renting their property as an STR but permitted STRs in other areas. 2021 WL 1146283, at *6. The property owners alleged that their homes were zoned for the same purposes and they were otherwise substantially similar to those who could conduct STRs. *Id.* at *6–7. They also argued that any difference between the homes did not supply a rational basis to distinguish between the plaintiffs and those who could conduct STRs. *Id.* Quoting Second Circuit cases, the court focused its analysis of the town's dismissal motion on whether the property owners had adequately alleged similar circumstances but different treatment: "[t]he purpose of requiring sufficient similarity is to make sure that no legitimate factor could explain the disparate treatment" and "whether parties are similarly situated is a fact-intensive inquiry best resolved after the parties engage in discovery." *Id.* at *7 (cleaned up). Based on the detailed allegations that the plaintiffs were similarly situated yet treated differently (very similar allegations to here), the *Calvey* court denied the government's motion to dismiss the equal protection claims. *Id.*; *accord, Gypsum Res. LLC v. Guinn,* 2008 WL 872835 (D. Nev. Mar. 27, 2008) (refusing to dismiss substantive due process and equal protection claims where the law

8

singled out the plaintiffs' property for disparate treatment). This Court should do the same.

In search of summary dismissal, the County string cites several cases that upheld STR regulations and concluded that local governments have a legitimate interest in preserving the character of their neighborhoods. D.'s Mot. at 7–8. But these cases share a flaw for Defendants: none of them explain how the distinctions in these STR regulations (ROZ v. NOZ and date of retirement) *themselves* relate to the County's interest in preserving its neighborhoods. These cases thus are uninformative on Plaintiffs' equal protection claim. For example, the case Defendants rely on primarily—*Nekrilov v. City of Jersey City*, 45 F.4th 662 (3d Cir. 2022)—did not even involve an equal protection claim. And the others similarly do not support dismissal. *Short Term Rental Ass'n of Georgia, Inc. v. Cooper*, 515 F. Supp. 3d 1331, 1338 (N.D. Ga. 2021) (entering judgment on the pleadings in favor of the government where the STR regulations did *not* discriminate based on region but applied to all homes in residential areas); *Short Term Rental All. of San Diego v. City of San Diego*, 2023 WL 3964059, at *3, 12 (S.D. Cal. June 12, 2023) (dismissing STR challenge where the plaintiffs did not plead detailed facts demonstrating the law discriminated against similarly situated persons); *Ewing v. City of Carmel-By-The-Sea*, 234 Cal. App. 3d 1579, 1590–91 (Cal. App. 1991) (affirming, after a trial on the merits, the STR regulations that did not involve any arbitrary classifications but prohibited everyone from engaging in STRs).

Even under rational basis review, Plaintiffs have satisfied the Tenth Circuit's pleading standard for their equal protection claims. The Court thus should deny dismissal of the claims.

## II. Plaintiffs Have Plausibly Alleged Substantive Due Process Claims (Claims 4 & 5).

The Complaint plausibly alleges that the challenged STR regulations violate Plaintiffs' substantive due process rights because the regulations are arbitrary and will not be effective in

achieving the goals put forth by the County.

Substantive due process protects against government actions that do not sufficiently advance a government interest. *See Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998). Governments have broad authority to enact zoning regulations, but that authority is not unbounded: zoning regulations violate substantive due process if they are "clearly arbitrary and unreasonable, having *no substantial relation* to the public health, safety, morals, or general welfare." *Vill. Of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). In *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 542 (2005), the Supreme Court clarified that the "substantially advances" a legitimate governmental interest test applies to due process challenges to land regulations.

A government cannot demonstrate a substantial relationship through mere conjecture. The government has the burden of producing *evidence* of a substantial relationship "to assure that the validity of [a regulation] is determined though *reasoned analysis* rather than mechanical application of . . . assumptions." *Ramos v. Town of Vernon*, 353 F.3d 171, 183–84 (2d Cir. 2003) (emphasis in original). There is also no substantial relationship when the government's arguments rely on "shoddy data or reasoning," *N.Y. State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 264 (2d Cir. 2015), or weak statistical evidence. *See Craig v. Boren*, 429 U.S. 190, 202 (1976).

In *Lingle,* the Court confirmed that land regulations violate substantive due process if they are ineffective at achieving the government's end. 544 U.S. at 542 (the "substantially advances" formula asks "whether a regulation of private property is *effective* in achieving some legitimate public purpose."). Here, Plaintiffs have alleged that the STR regulations do not substantially advance a legitimate governmental interest with detailed allegations undermining the efficacy and rationales for the regulations. Compl. ¶¶ 137-189. For example, the regulations claim to preserve

10

neighborhood character, but that rationale fails when similar neighborhoods are treated differently. Compl. ¶¶ 150–162 (certain NOZ neighborhoods have the same traits as ROZ neighborhoods). Plaintiffs have similarly alleged that the challenged STR regulations do not provide workforce housing, Compl. ¶¶ 138–149, and that the County failed to collect accurate data of complaints about STRs on which the County relied in formulating the regulations. Compl. ¶¶ 163–184.

The STR regulations are ineffective but are not benign. The Complaint details the severe downsides of the successively harsher, arbitrary laws. *See* Compl. ¶¶ 75-77 (imposing more severe regulations without giving existing regulations a chance to operate); ¶¶ 78–85 (arbitrarily limiting who is qualified to apply for certain licenses); ¶¶ 86–118 (arbitrarily capping certain licenses); ¶¶ 119–36 (arbitrarily capping bookings); ¶¶ 95–101 (shutting Mr. Gutzki out of the market); ¶¶ 104–12 (forcing Mr. Davis from his home); ¶¶ 122–32 (forcing Mr. Jefferies from his home).

Defendants rely on *Powers v. Harris*, 379 F.3d 1208 (10th Cir. 2008), where the court affirmed the denial of a due process challenge to state laws requiring a license for the sale of caskets. But Defendants fail to mention that the district court entered a ruling in that case only after a bench trial and the presentation of evidence. *Id*. at 1214. That is all Plaintiffs seek here—a chance to present evidence that the STR regulations will not substantially advance a legitimate County interest. Because they have adequately pled a due process claim, Plaintiffs have earned that chance.

### III.     Plaintiffs Have Sufficiently Alleged a Dormant Commerce Clause Claim (Claim 3).

Whether the Court adopts Plaintiffs' interpretation of Type I licenses under Ordinance 20-C or Defendants', the law prohibitively discriminates against interstate commerce.

#### A. The plain language of Ordinance 20-C blocks out-of-state homeowners from participating in the STR market.

Ordinance 20-C facially discriminates against out-of-state property owners by barring them

11

from the STR market while allowing substantially similar local property owners to get a license to engage in STRs. This violates the dormant Commerce Clause.

For NOZ properties, there are two STR license types. Type II licenses are unavailable. Compl. ¶¶ 86–92. That leaves Type I licenses. An out-of-state property owner could get a Type I license if they rented their property to a local resident as the local's primary residence (i.e., rented to a Qualified Occupant). But neither they nor their local renter could use it to rent STRs.

Defendants disagree and suggest that the out-of-state owner can contract with a "resident host" to act as the Qualified Occupant and that somehow STRs could then happen at the property and the owner could somehow benefit. D.'s Mot. at 3, 12–13. Defendants seem to be drawing upon the STR schemes from *Rosenblatt v. City of Santa Monica*, 940 F.3d 439 (9th Cir. 2019), and *Short Term Rental All. of San Diego v. City of San Diego*, 2023 WL 3964059 (S.D. Cal. June 12, 2023) ("*STRA*"). But Defendants' interpretation is wrong based on the law's plain language. And the Court should reject Defendants' attempt to add language to fit the law within *Rosenblatt* and *STRA*.

A Type I license requires that the property be the primary residence of a Qualified Occupant: a Summit County resident. Ordinance 20-C, §§ 3.2(a)(i); 1.1(d). An out-of-state owner, thus, cannot be the Qualified Occupant. But only a Qualified Occupant can engage in STRs under a Type I license because the law limits STRs to *"[w]hen the Qualified Occupant* is on-site during rentals and *is engaged in partial home rental*, no more than 50% of the approved bedrooms in the home, up to 2 bedrooms may be short-term rented." *Id.* § 3.2(a)(iv)(a). Or like Defendants say, a Type I license "allows the resident host to partially rent out *a portion of his or her residence*." D.'s Mot. at 3 (emphasis added). But not any Qualified Occupant can rent an STR because no person may operate an STR in the County without a license. Ordinance 20-C, § 2.2. And that license must

12

be held by the property owner. *Id.* § 2.9. So the only Qualified Occupant that can engage in STRs under a Type I license is a local owner. This bars an out-of-state owner or their Qualified Occupant from engaging in STRs and makes the law facially discriminatory.

When properly construed, Ordinance 20-C does not line up with the regulations in *Rosenblatt* or *STRA*. In *Rosenblatt*, the Ninth Circuit noted that under the applicable ordinance an "out-of-state owner could rent out the property on a long-term basis with a condition that one of the rooms be used for the *owner's* short-term rentals" or "the owner could expressly allow the long-term renter to sublet a room on a short-term basis in exchange for paying a higher monthly rent." 940 F.3d at 450–51 (emphasis added). But the plain language of Ordinance 20-C does not allow an out-of-state owner either option. Similarly, in *STRA*, the district court concluded that "the owner may . . . authorize a long-term tenant to fulfill that role" of host to engage in STRs. 2023 WL 3964059, at *7. But again, that is not permitted under Ordinance 20-C. At bottom, the regulations in *Rosenblatt* and *STRA* allowed out-of-state owners to benefit from STRs on their properties and the County's regulations do not. Defendants cannot shoehorn Ordinance 20-C into this precedent by grafting a "nonowner resident-host" exception onto the law. ANTONIN SCALIA AND BRYAN A. GARNER, Reading Law: The Interpretation of Legal Texts 91 (West. Pub. 2012) (courts should not fill-in what they perceive to be "gaps" in statutes).

Because Ordinance 20-C, properly interpreted, facially blocks out-of-state property owners (who are similarly situated to in-state owners) from using their Type I license to directly or indirectly rent STR, it violates the dormant Commerce Clause. *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 326 (5th Cir. 2022) (holding that when a regulation's "upshot is that only [Qualified Occupants] of the [County] may enter the market for STRs," that regulation violates

the dormant Commerce Clause).; *accord Anding v. City of Austin*, No. 1:22-cv-01039, 2023 WL 4921530, at *7 (W.D. Tex. Aug. 1, 2023); *S. Lake Tahoe Prop. Owners Grp. v. City of S. Lake Tahoe*, 92 Cal. App. 5th 735, 764–67 (2023). Plaintiffs have thus stated a claim for relief.

### B.     A resident-host exception would still violate the dormant Commerce Clause.

Even if Ordinance 20-C did allow an out-of-state property owner to engage in STRs with a local resident-host, the STR regulations would still violate the dormant Commerce Clause.

First, such a scheme would still facially discriminate against out-of-state property owners. Out-of-state property owners could not rent STRs unless they contracted with a local resident to act as their resident host and live at the property at least nine months a year, while Summit County residents could rent STR without a long-term local tenant. *See* D.'s Mot. at 3. This would impose untold costs on out-of-state homeowners that are not born by Summit County residents: including finding a local, paying a local or reducing their rent to act as the resident host, and losing STR income for the room that the local occupies. The imposition of those costs on out-of-staters, while not imposing them on in-staters, facially violates the dormant Commerce Clause. *Hignell-Stark*, 46 F.4th at 327 (when a law's text imposes more burdens on out-of-staters than in-staters, even if those burdens do not block participating in the market, the law facially discriminates against interstate commerce). Thus the law is per se invalid even under the County's interpretation.

Second, even if the scheme weren't facially discriminatory, it would still violate the dormant Commerce Clause by imposing incidental effects on interstate commerce. Defendants misstate the dormant Commerce Clause analysis by collapsing the "two primary principles" governing the inquiry. *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2090 (2018). Even if a law is facially neutral (as Defendants seemingly contend) and its impacts on interstate commerce are

14

incidental, the law still violates the dormant Commerce Clause if it fails the balancing test under *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Courts must weigh whether "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits" and if local interests "could be promoted as well with a lesser impact on interstate activities." *Id.*[2]

So even if the STR regulations didn't facially discriminate, they still impose excessive burdens on interstate commerce. SCRH members face substantial burdens when renting to long-term renters—the only individuals who would be eligible as Qualified Occupants. *See, e.g.*, Compl. ¶¶ 123, 144, 146. Moreover, these homeowners would have to put their homes on the long-term rental market for below market rates to make them affordable to Qualified Occupants and then make up the difference by increasing their prices for STRs. *See id.* ¶ 145. The STR regulations, then, would require out-of-state residents to incur higher costs or abandon STRs.[3]

Such costs are unnecessary. Plaintiffs' Complaint alleges alternatives that would promote Summit County's stated interests with lesser impact on interstate activities. *See Pike*, 397 U.S. at 142; Compl. ¶ 216. And to reduce conflicts related to STRs, the County could increase enforcement efforts. *Id.* ¶ 217. Given the burdens on interstate commerce and availability of nonburdensome alternatives, the STR regulations fail *Pike* balancing.[4]

## CONCLUSION

Plaintiffs request that the Court DENY Defendants' Motion to Dismiss (ECF No. 21).

---

[2] Defendants did not apply *Pike* balancing in their Motion to Dismiss. So it would be unfair to entertain an argument on Defendants' reply that the STR regulations pass muster under that test. *See, e.g.*, *Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997).
[3] Should the Court decline to recognize Plaintiffs' alleged burdens, the Court should allow Plaintiffs to amend the Complaint to address the County's novel interpretation of the ordinance.
[4] Should the Court dismiss the federal claims, it should still exercise supplemental jurisdiction over the state-law claims.

15

DATED this 25th day of October, 2023.

                BROWNSTEIN HYATT FARBER SCHRECK, LLP

                */s/ Matthew C. Arentsen*
                Matthew C. Arentsen, Bar No. 45021
                Justin L. Cohen, Bar No. 44811
                Wayne F. Forman, Bar No. 14082
                Rosa L. Baum, Bar no. 56652
                675 15th Street, Suite 2900
                Denver, CO 80202
                Telephone: (303) 223-1100
                Email: marentsen@bhfs.com

                *Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

      I hereby certify that on this **25th day of October 2023**, I electronically filed a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS** with the clerk of the court using the CM/ECF system which will send notification of such filing to the following counsel:

| | |
|---|---|
| Josh Marks | jam@bhgrlaw.com |
| Geoffrey Klingsporn | Geoff.klingsporn@bhgrlaw.com |

*Counsel for Defendants*

                                            /s/ Paulette M. Chesson
                                            Paulette M. Chesson, Paralegal
                                            Brownstein Hyatt Farber Schreck, LLP
                                            675 15th Street, Suite 2900
                                            Denver, CO 80202
                                            303-223-1100

26128006