IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02057-GPG-SBP

TODD RUELLE, an individual; SUMMIT COUNTY RESORT
HOMES INC., a Colorado nonprofit corporation;

    Plaintiff(s),

v.

SUMMIT COUNTY BOARD OF COUNTY
COMMISSIONERS; ELISABETH LAWRENCE, in her Official
Capacity as a Commissioner;
TAMARA POGUE, in her Official Capacity as a
Commissioner; and JOSHUA BLANCHARD, in
his Official Capacity as a Commissioner,

    Defendant(s).

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

---

Summit County Board of County Commissioners (the "BOCC"), Elisabeth Lawrence, Tamara Pogue, and Joshua Blanchard (collectively "Defendants"), through counsel, respectfully submit this reply in support of their Motion to Dismiss [Doc. 21]:

**ARGUMENT**

**I.**    **Equal Protection (First and Second Claims for Relief)**

Defendants showed, and (by failing to respond) Plaintiffs concede, that no fundamental right or suspect class is at issue. Rational basis review thus applies to Plaintiffs' equal protection claims. *See* [Doc. 21 at 4-6.]

Plaintiffs also apparently accept "that the STR regulations generally serve some legitimate [governmental] interests." But they argue that "the classification *itself*," and not the ordinance as

a whole, must be rationally related to that interest. [Doc. 27 at 6.] They thus focus entirely on two specific subparts of Ordinance 2-C which they argue bear no rational relationship to "the County's interest in preserving its neighborhoods." [*Id*. at 6-9.]

As an initial matter, Plaintiffs' emphasis on "the classification itself" does not reduce their burden. Under rational basis review, a local ordinance "must be upheld ... if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). And because such classifications are "presumed constitutional, the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Armour v. Indianapolis*, 566 U.S. 673, 685 (2012) (internal quotation omitted). *See also Christie v. Coors Transp. Co.,* 933 P.2d 1330, 1333 (Colo. 1997) ("If any conceivable set of facts would lead to the conclusion that a classification serves a legitimate purpose, a court must assume those facts exist.").

> A. *Resort and Neighborhood Zones are not similarly situated and are rationally related to the goals of Ordinance 20-C*

Plaintiffs first challenge Defendants' decision to "put County properties into one of two zones: the ROZ or the NOZ," each of which has different STR licensing requirements. [Doc. 27 at 4 (citing Ordinance 20-C, §§ 3.1, 3.2).] Plaintiffs point to allegations that the two zones are similar in their "composition … amenities … access to recreation … infrastructure … and housing stock" to assert that "property owners in the ROZ are similarly situated to those in the NOZ *for all relevant purposes*." [*Id*. at 5 (emphasis added).] But Plaintiffs overlook the most salient difference: the geographical location of each Zone within the County. [*See* Doc. 1-2 at 18-19 (maps); Doc. 1-3 at 20-23 (same).] Property owners in the NOZ are not similarly situated "for all relevant

purposes" with properties in the ROZ because, simply put, they sit in different parts of the County.[1] The ROZ areas are generally adjacent to ski resorts and one pre-existing RV park. It is reasonable to conclude that neighborhood preservation is not as critical in such areas due to historic rental patterns in zones close to ski resort base areas.

Moreover, it is not simply enough to compile a list of similarities and allege in conclusory fashion that two locations are similarly situated. Rather, "[t]o be 'similarly situated' the individuals must be prima facie identical in all relevant respects or directly comparable in all material respects; although this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar indeed." *Ebonie S. ex rel. Mary S. v. Pueblo Sch. Dist. 60*, 819 F. Supp. 2d 1179, 1189 (D. Colo. 2011), *aff'd sub nom. Ebonie S. v. Pueblo Sch. Dist. 60*, 695 F.3d 1051 (10th Cir. 2012) (citing *U.S. v. Moore,* 543 F.3d 891 (7th Cir. 2008)) (quotation omitted).

No matter how similar the "amenities" or "infrastructure" of each zone, Plaintiffs with properties in the NOZ cannot meet their burden to show that treating them differently from property owners in entirely separate locations is irrational or violates equal protection. *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.*, 927 F.2d 1111, 1119 (10th Cir. 1991) (no equal protection violation where "two similarly situated developers are treated differently based solely upon the location of the proposed development" because "retaining the vitality of the downtown area was a legitimate interest of the city commission"); *see Van Sant & Co. v. Town of Calhan*, 83

---

[1] This difference also undermines Plaintiffs' reliance on *Calvey v. Town Bd. of N. Elba*, 2021 WL 1146283, (N.D.N.Y. Mar. 25, 2021), which involved short-term rental regulations that applied to all areas of the town, not a classification distinguishing between different areas or neighborhoods. Plaintiff there brought a "class of one" equal protection claim based on exceptions to those regulations; the *Calvey* court did not analyze what was required to adequately plead that those exceptions were irrational. *Id.* at *6-7.

F.4th 1254, 1282 (10th Cir. 2023) (plaintiff planning to convert mobile home park to RV park was not similarly situated to existing RV parks in the same small town); *Nordlinger v. Hahn*, 505 U.S. 1, 7 (1992) (state property tax code did not violate equal protection even though "Petitioner … was paying about five times more in taxes than some of her neighbors who owned comparable homes since 1975 within the same residential development.").

Even if they could allege they are similarly situated, Plaintiffs would still have to show that the differential treatment of the two zones is irrational. "In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification." *Nordlinger*, 505 U.S. at 10-11. As explained in the Motion, the division of the County into two Overlay Zones is rationally related to the purpose of the ordinance. [Doc. 21 at 8.] Legislative findings about neighborhood complaints and the loss of housing stock—recited in the ordinances, attached to the Complaint, and thus incorporated into Plaintiffs' allegations—provide a rational basis for distinguishing between the tourist-oriented areas around the ski resorts of Summit County (ROZ) and neighborhood areas (NOZ). Limiting STR conversions in the neighborhood zones rationally targets areas most conducive to long-term workforce housing while encouraging STRs close to resort areas and tourist infrastructure. *Id*.

### B. The Ordinance does not distinguish among "retirees"

Plaintiffs also briefly contend that the ordinance "arbitrarily distinguishes between those who already retired and those who retire in the future." [Doc. 27 at 5-6.] This theory is entirely based on Plaintiffs' misreading of Ordinance 20-C, a legal conclusion the Court need not accept.

The only mention of "retirees" in Ordinance 20-C is in section 1.1(d)(ii), which provides that "Qualified Occupants may be authorized to retire" if they meet certain age and work

4

requirements. Plaintiffs interpret this to mean that residents already of retirement age who have stopped working (i.e., "who already retired") are forbidden from being a Qualified Occupant. [*See* Doc. 1 at ¶ 101.] But nothing in the text of Ordinance 20-C prevents qualified, previously-retired residents from being "authorized to retire" for purposes of Qualified Occupant status. Nor does the complaint allege that anyone has been denied an STR license on this basis.

The irrational "retiree" distinction alleged by Plaintiffs is, in short, a discrepancy of their own invention with no basis in fact. Plaintiffs may not manufacture an equal protection violation by misreading Ordinance 20-C: "[t]he Equal Protection Clause does not entitle the [plaintiffs] to a misinterpretation of the ordinance." *Smith v. City of Chicago*, 457 F.3d 643, 649 (7th Cir. 2006) (citing *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,* 547 U.S. 47, 56 (2006) ("There can be little doubt that … whether a statute is constitutional fairly includes the question of what the statute says.")).

As a matter of law, Plaintiffs' allegations do not meet their burden to allege that Summit County's STR regulations, or the classifications on which they are based, have no conceivable connection to the County's legitimate interests. Their equal protection claims must be dismissed.

## II.     Substantive Due Process (Fourth and Fifth Claims for Relief)

As with equal protection, the first step of the substantive due process analysis is to consider whether a fundamental right is at stake. *Van Sant & Co. v. Town of Calhan*, 83 F.4th 1254, 1277 (10th Cir. 2023). Again, Plaintiffs do not contest that they have no fundamental right in an STR license. [Doc. 21 at 9.] Accordingly, the Court applies rational basis review. *Van Sant*, 83 F.4th at 1277-79; *Stewart v. City of Okla. City*, 47 F.4th 1125, 1138 (10th Cir. 2022). Under this standard, Plaintiffs' due process claims fail for familiar reasons. *Van Sant*, 83 F.4th at 1282 ("substantive

due process analysis and equal protection analysis 'proceed along the same lines,' i.e., they 'converge,' meaning that, at least in most cases, the analysis on one 'sufficiently addresses both claims.'") (quoting *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004)).

Plaintiffs advance an additional argument: "that land regulations violate substantive due process if they are ineffective at achieving the government's end." [Doc. 27 at 10.] Plaintiffs purport to derive this test from *Lingle v. Chevron*, 544 U.S. 528 (2005). But *Lingle*, a regulatory takings case, created no such rule. On the contrary, the Supreme Court reaffirmed its prior holdings that "a municipal zoning ordinance [will] survive a substantive due process challenge so long as it [is] not clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," and that only "a regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause." *Id*. at 540-42 (emphasis and internal quotations marks omitted).

Plaintiffs allege that the County relied on inaccurate data or assumptions, and question whether the regulations will be effective at meeting the County's stated goals. But neither *Lingle* nor the out-of-circuit cases cited by Plaintiffs alter the well-settled principle that local governments "are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with *substantially less than mathematical exactitude*…. In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (emphasis added); *Jennings v. City of Stillwater*, 383 F.3d 1199, 1211 (10th Cir. 2004) (refusing to treat "the federal

6

courts as general-purpose second-guessers of the reasonableness of broad areas of state and local decisionmaking: a role that is both ill-suited to the federal courts and offensive to state and local autonomy in our federal system.").

Plaintiffs are simply incorrect that, under rational basis review, they may escape dismissal by alleging that the government relied on "shoddy data or reasoning." [Doc. 27 at 10.] Without exception, the cases upon which they rely for this proposition applied heightened (intermediate) scrutiny and are thus inapplicable to the rational-basis analysis. *Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003) (age-based classification); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 260 (2d Cir. 2015) (gun-control laws); *Craig v. Boren*, 429 U.S. 190, 199 (1976) ("gender-based distinction").[2]

On the contrary, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns, Inc.*, 508 U.S. at 315. "[T]the burden is on the party challenging a regulation to negative every conceivable basis which might support it. If the relationship is at least fairly debatable, the Ordinance must be upheld … the Court need not determine whether the same government purpose can be better served by other means." *Short Term Rental All. of San Diego v. City of San Diego*, No. 22CV1831-L-BGS, 2023 WL 3964059, at *12 (S.D. Cal. June 12, 2023) (cleaned up).

In sum, "Plaintiffs' burden to plausibly allege their claims … is particularly high when challenging a local ordinance because "lawmakers are presumed to have acted constitutionally."

---

[2] Plaintiffs also gesture towards the seminal zoning case *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365 (1926); but in *Euclid* the Court famously held—as Defendants have repeatedly argued—that "if the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control." *Id.* at 388.

7

*Short Term Rental Owners Ass'n of Georgia, Inc. v. Cooper*, 515 F. Supp. 3d 1331, 1347 (N.D. Ga. 2021), *aff'd sub nom. Heyman v. Cooper*, 31 F.4th 1315 (11th Cir. 2022) (quoting *Panama City Med. Diagnostic Ltd. v. Williams*, 13 F.3d 1541, 1545 (11th Cir. 1994)). Plaintiffs cannot meet this burden, because crafting caps on short-term rentals in more traditional neighborhoods is a rational means to combat the effects of STR conversions on the County's stock of residential housing. Accordingly, Plaintiffs' due process claims fail as a matter of law for the same reasons as their equal protection claims.

### III.     Dormant Commerce Clause (Third Claim for Relief)

In their Motion, Defendants showed that, contrary to Plaintiffs' allegations, Ordinance 20-C does not forbid out-of-state property owners from obtaining a Type I STR license. If an owner cannot serve as the Qualified Occupant (because they live elsewhere, or for any other reason), the ordinance permits them to designate any County resident over the age of 18 to reside at the property and serve in that role.

Plaintiffs disagree, asserting that the County's interpretation of its Ordinance "is wrong based on the law's plain language" and that "the only Qualified Occupant that can engage in STRs … is a local owner." [Doc. 27 at 12-13.] The Court has the Ordinance before it [Doc. 1-3] and need not defer to Plaintiffs when deciding this purely legal question of statutory interpretation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (quotation omitted)); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) ("if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls.").

8

Indeed, Plaintiffs' interpretation of the Ordinance fails to give effect to the entire statute: they cannot explain why the County would create a resident-host option but then restrict the use of that option to property owners who already reside in the County.

In the alternative, Plaintiffs maintain that a resident-host requirement "would still facially discriminate against out-of-state property owners," and "even if the scheme weren't facially discriminatory, it would still violate the dormant Commerce Clause by imposing incidental effects on interstate commerce." [Doc. 27 at 14.] Invoking the balancing test from *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), Plaintiffs argue that the STR regulations "impose excessive burdens on" out-of-state owners. [*Id.*] One Plaintiff alleges that "his [long-term] housemates were rough on the house;" other Plaintiffs allege in conclusory fashion that they "would not rent their homes as [long-term rentals]" because of similar "problems associated with LTRs." [*Id.* at 15 (citing Doc. 1 at ¶¶ 123, 144, 146).] They maintain that these "costs are unnecessary" and that therefore "the STR regulations fail *Pike* balancing." [*Id.*] Plaintiffs thus "urge [the Court] to read *Pike* as authorizing judges to strike down duly enacted state laws … based on nothing more than their own assessment of the relevant law's 'costs' and 'benefits.'" *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 380 (2023).

But as the Supreme Court held in *Ross*, "[w]hatever other judicial authorities the Commerce Clause may imply, that kind of freewheeling power is not among them." *Id*. Rather, "our cases have expressly cautioned against judges using the dormant Commerce Clause as 'a roving license for federal courts to decide what activities are appropriate for state and local government to undertake.'" *Id*. (quoting *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 343 (2007). This Court should likewise reject Plaintiffs'

9

invitation here to invalidate Ordinance 20-C by re-weighing costs and benefits already properly considered by the County's legislative body. The Commerce Clause provides no basis to void the Ordinance here.

Finally, the Court should also reject Plaintiffs' request, relegated to a footnote, to further amend the Complaint. "It is well-settled under our cases that [such] drive-by requests to amend the complaint do not rise to the status of a motion…. As such, the district judge was not obliged to consider the matter." *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (citations and quotations omitted). Plaintiffs' unsupported assertion that the Court "should still exercise supplemental jurisdiction over the state-law claims" is likewise contrary to precedent. In this Circuit, when "the district court has dismissed all claims over which it has original jurisdiction, courts *must* dismiss pendent state law claims without prejudice absent compelling reasons to the contrary." *Brooks v. Gaenzle,* 614 F.3d 1213, 1230 (10th Cir. 2010) (internal citation and quotations omitted) (emphasis added).

WHEREFORE, Defendants Summit County Board of County Commissioners, Elisabeth Lawrence, Tamara Pogue, and Joshua Blanchard respectfully request that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice, and order any other necessary and proper relief.

Respectfully submitted this 15th day of November 2023.

BERG HILL GREENLEAF RUSCITTI LLP

*s/ Josh A. Marks*

_____

Josh A. Marks
1712 Pearl Street
Boulder, CO  80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601
Email:  jam@bhgrlaw.com

*Attorney for Defendants*
*Summit County Board of County Commissioners,*
*Elisabeth Lawrence, Tamara Pogue, and*
*Joshua Blanchard*

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 15th day of November 2023, I electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification to such filing to the following e-mail addresses,

  Matthew C. Arentsen
  Rosa L. Baum
  Wayne F. Forman
  Justin L. Cohen
  Brownstein Hyatt Farber Schreck, LLP
  675 15th Street, Suite 2900
  Denver, CO  80202
  marentsen@bhfs.com
  rbaum@bhfs.com
  wforman@bhfs.com
  jcohen@bhfs.com

             *s/ Cheryl Stasiak*

             Cheryl Stasiak