IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:23-cv-1349-DDD-SBP

RICHARD GRIGSBY, CHERYL GRIGSBY,
and ROCKY MOUNTAIN MEMORIES, INC.

  Plaintiffs,

v.

ESTES PARK, Colorado,
a Colorado Municipal Corporation

  Defendant.

---

**ORDER GRANTING PARTIAL MOTION TO DISMISS**

---

Plaintiffs challenge a fee imposed on short-term rental properties by the Town of Estes Park. They raise a variety of claims, including state and federal constitutional violations. Doc. 1. The Town has filed a Partial Motion to Dismiss focused on the federal constitutional claims. Doc. 13. Because the facts alleged by the Plaintiffs, even if true, do not amount to violations of the constitutional provisions they cite, the motion is granted.

BACKGROUND

Like many tourist towns, Estes Park, Colorado, has a problem getting the supply of housing to meet the demand provided by various people: tourists, workers, and full- and part-time residents. In a place like Estes Park, a mix of natural and man-made factors (steep mountains and valleys; rivers and streams; bordering national parks and other

- 1 -

**EXHIBIT 1**

public lands; regulation preventing large-scale, high density (i.e., tall) buildings; etc.) conspire to aggravate the difficulty of increasing supply. So prices rise, making it both increasingly difficult for anyone actually working in such a place to afford to live nearby while also making it more profitable for those who own property to seek ways to rent it, in particular via short-term or vacation rentals.

On the theory that short-term rentals reduce the stock of housing that otherwise might be rented on a longer-term basis to local workers, in March 2022 Estes Park enacted an ordinance imposing a "linkage fee" on short-term rental properties rented for stays less than thirty days. The fee was initially set at $1390 per vacation rental license, and adjusts for inflation. See Doc. 13-1 at 16. According to the Town, this fee "helps defray the costs imposed on the Town's housing market by short-term rentals" and is based on a study by an entity called Root Policy Research. *See* Doc. 13 at 3; Doc. 13-1 at 15.

Plaintiffs Richard Grigsby and Cheryl Grigsby are long-time residents of Estes Park who also own three antique cabins they have used as short-term rentals.[1] Plaintiffs contend that since they purchased the cabins in 2011, they "were induced by Town policies to pursue a short-term vacation rental by owner business model." Doc. 1 at 11. For instance, they renovated the cabins to be compliant with Town codes for "less than 30 day residential rental purposes," obtained business licenses, and "were granted annual Vacation Home Rental Licenses on each cabin." *Id*. They complied with all relevant codes and requirements, had no complaints from neighbors, and paid "annual Vacation Home

---

[1] The entity Plaintiff is the Grigsbys' property management company. Doc. 1 at 10.

**EXHIBIT 1**

licensing fees on all three based on number of bedrooms: $300 for Cabin #1, $300 for Cabin #2, and $250 for Cabin #3." *Id.*

In December 2022, however, Plaintiffs "put the Defendant on notice that they were protesting the amendment related to payment of the Impact Fee and requested a hearing." Id. at 12. In January 2023, they paid both the licensing and impact, or linkage, fee from the new ordinance on Cabins 1 and 2, but paid only the licensing fee on Cabin 3. Id. They "did not pay the Impact Fee $1,390 and requested a fair hearing and due process." *Id.* On February 2, 2023, the Town "revoked Plaintiffs' Vacation Home License on Cabin #3 and threatened criminal action if Cabin #3 was rented without a new valid Vacation Home License in alleged violation of Title 5, as amended." *Id.* Plaintiff alleges this was "a punitive action," and invalid for a variety of reasons, leading to this suit. *Id.*

## LEGAL STANDARD

When presented with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a district court must decide whether the facts alleged in the complaint, if true, would entitle the claimant to some legal remedy. *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The court must accept the alleged facts as true and view them in the light most favorable to the claimant. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). But the court need not accept as true conclusory allegations that are unsupported by factual averments. *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1159 (10th Cir. 2021). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). So a court is to "disregard

**EXHIBIT 1**

conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id*.

## DISCUSSION

Plaintiffs' complaint brings eight causes of action. The first two relate only to alleged violations of state constitutional and statutory law, and are not the subject of the present motion. The third cause of action is titled Violation of Equal Protection. The fourth, fifth, and sixth are captioned Violation of Substantive Due Process. The seventh claim is headed Violation of Commerce Clause and the eighth "Violation of Contracts Clause and Colorado State Statute." Defendant's motion focuses on the federal constitutional aspects of these claims, but notes that in many of their claims, Plaintiff cites to both the United States and Colorado Constitutions without providing any reason to believe the state constitution provides greater protection for them in these areas than the federal constitution does. *See* Doc. 13 at 4. While it is not necessarily true that the state constitution and the federal constitution are so identical in these areas, it is true that Plaintiffs have not separately supported their theories under the state constitution in any way. Nor do Plaintiffs make any attempt to defend those theories in their response. Because I conclude that all federal claims must be dismissed, the parallel state constitutional claims will therefore also be dismissed.

### I.   Claim 3: Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment provides that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A law that discriminates between similarly situated individuals or groups must be narrowly tailored to further a compelling governmental interest. *Save Palisade*

**EXHIBIT 1**

*FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002). Distinctions between those not similarly situated, however, "need only be rationally related to a legitimate government purpose." *Id.*

Plaintiffs appear to concede that this law is of the latter type,[2] because they focus their argument on showing that the "distinction, as it relates to the Impact Fee, between vacation homeowners who rent more than or less than 30 days is arbitrary and has no rational basis." Doc. 1 at 20. In response to the motion they bring forward pages of citations to things like the Estes Park Strategic Plan, demographic and economic studies, HUD reports, and other data that they contend show that the "Impact Fee fails to address and solve the complex, multi-faceted workforce affordable housing crisis present in the Town that affects all business owners and not just the 10% of home owners who rent their homes on a short-term basis. *See* Doc. 16 at 1-8.

Plaintiffs make a strong case that the Impact Fee is not likely to solve much, if any, of Estes Park's affordable housing issues. The problem, however, is that even assuming that is true, the ordinance still satisfies rational basis scrutiny. At this minimal level of scrutiny, courts do not— may not—strike down a law even if it may not succeed in bringing about the result it seeks to accomplish. *Seagram Sons, Inc. v. Hostetter,* 384 U.S. 35, 50 (1966), *abrogated on other grounds by Healy v. Beer Inst., Inc.,* 491 U.S. 324, 342 (1989). Even if there is no empirical evidence to support the assumptions underlying the legislative choice, it must be upheld if there is a conceivable basis for it. *Vance v. Bradley,* 440 U.S.

---

[2] To the extent Plaintiff's response to the motion makes occasional assertions that the law distinguishes between similarly situated groups, it makes no effort to justify the application of strict scrutiny and can be deemed forfeited for that reason. It would fail on the merits, too. *See Save Palisade Fruitlands,* 279 F.3d at 1210 (only suspect and quasi-suspect classifications are subject to heightened scrutiny).

- 5 -

**EXHIBIT 1**

93, 110-11 (1979); *see also McDonald v. Board of Election Comm'rs,* 394 U.S. 802, 809 (1969) ("Legislatures are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and their statutory classifications will be set aside only if no grounds can be conceived to justify them."). Courts, in fact, are "*obligated* to seek out other conceivable reasons for validating" a law. *Powers v. Harris,* 379 F.3d 1208 (10th Cir. 2004) (quoting *Starlight Sugar, Inc. v. Soto,* 253 F.3d 137, 146 (1st Cir. 2001) (emphasis in *Powers*).

Rational-basis review simply does not give courts the option to speculate as to whether some other scheme could have better regulated the evils in question. *Mourning v. Family Publ'n Serv., Inc.,* 411 U.S. 356, 378 (1973). "[E]qual protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313. Courts, in fact, "never require a legislature to articulate its reasons for enacting a statute, [so] it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Id.* at 315. (citations and quotations omitted).

The bottom line is that Plaintiffs cannot succeed on their equal protection challenge simply by showing that the Root study is unreliable or does not support the ordinance, or that the Town has failed to show "that short term rental vacation homes alone have a detrimental impact" on workforce housing. *See* Doc. 16 at 13. Plaintiffs seem quite right that "the affordable housing problem in the Town is a complex, multifaceted problem." *Id.* But even so, the Town is not required by the constitution to try to deal with every facet of that problem at once, and may do so one step at a time. *See Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 466 (1981) (a "legislature need not strike at all evils at the same time or

**EXHIBIT 1**

in the same way" and may take actions "that only partially ameliorate[s] a perceived evil and defer[s] complete elimination of the evil to future regulations"). Even if it is debatable whether the Impact Fee will do anything to address problem, it must be upheld. *United States v. Carolene Products Co.,* 304 U.S. 144, 154 (1938) (if the issue is debatable, the decision of the legislature must be upheld if "any state of facts either known or which could reasonably be assumed affords support for it"). The rational basis standard of scrutiny is meant to ensure that the power vested in elected, legislative officials, rather than appointed judges, is the primary method of government. For that reason, "[s]econd-guessing by a court is not allowed." *Powers*, 379 F.3d at 1217 (citing *Carolene Products*).

That the Fee may do little to fix the workforce housing problem in Estes Park therefore does not permit this court to invalidate it. Even if it will do nothing to fix that multifaceted problem, it still must be upheld if it serves any other conceivable, legitimate government purpose. *Beach Communications, Inc.,* 508 U.S. at 315 ("those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it") (internal citations and quotations omitted)). The Town at the very least believes that the Fee helps to offset some costs of government, which is a legitimate purpose. The Fee may also serve to discourage some property owners from using their properties as short-term vacation rentals, which is not an illegitimate purpose. Under current binding precedent, even if the purpose of the Fee is to protect others in the hospitality industry, such as hotel operators, from competition from the likes of Plaintiffs, *that* would be a legitimate purpose served by the ordinance. *Compare Powers*, 379 F.3d at 1218-23 (majority opinion) *with id.* at 1225-27 (Tymkovich, J., concurring). The Impact Fee does not violate the Equal Protection Clause.

**EXHIBIT 1**

### II.     Claims 4, 5, 6: "Substantive Due Process"

Claims 4-6 of Plaintiffs complaint are not particularly easy to follow. They all are labeled "Substantive Due Process" and for the most part repeat the same allegations. See Doc. 1 at 21-32. They all cite various parts of the Fifth Amendment, including not just the Due Process Clause, but the Takings Clause as well. *Id*. It appears that despite their labeling, Plaintiffs are attempting to assert at least one claim under the Takings Clause (Claim 4), and two under some combination of Takings, Due Process, and Equal Protection theory. See Doc. 16 at 20-22 ("Plaintiffs allege in the Complaint that the Impact Fee is an additional burden to the profitability of their business. The Impact Fee is not rational and intentionally treats Plaintiffs differently from others similarly situated. Plaintiffs attempted to contest the Impact Fee but were denied a hearing to discuss it.").

#### A. Claim 4: Takings Clause

As the Town points out, Plaintiffs' defense of Claim 4 put forward in their response brief (Doc. 16 at 16-20) does not really match the bulk of the allegations in the Complaint (Doc. 1 at 21-24). The claim now appears to be that "there was a regulatory taking of the property on which Cabin #3 sits when its short-term rental license permit was revoked due to a regulatory action that deprived it of all economically beneficial use of the property and also because the regulatory action went 'too far.'" Doc. 16 at 16 (citing *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104 (1978)).

The first of these points is quickly dispatched, as there is no plausible allegation that supports the assertion that revoking a short-term rental license actually deprived Plaintiffs of *all* economically beneficial use of their cabin. And that is what is required for such a claim. S*ee Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). While Plaintiffs claim

- 8 -

**EXHIBIT 1**

Cabin #3 is small and lacks storage or a washer or dryer or a full kitchen, *see* Doc. 16 at 17, that does not make it useless for any purpose other than short-term vacation rentals, even in 21st Century America. As Plaintiffs note, despite being dorm-like, it does offer "a comfortable place to stay and enjoy the beauty and benefits of the Estes Valley." *Id*. There are many uses of such a place even if short-term rental is no longer one of them.

The second contention, that revoking the short-term rental license goes "too far" under *Penn Central*, is only slightly more complicated. *Penn Central* recognizes that a regulation can amount to a taking "based on a complex of factors, including (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action." *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1224 (10th Cir. 2021) (internal quotation marks omitted).

It is not entirely clear here whether this claim is based on the imposition of the Impact Fee itself or on the Town's revocation of Plaintiffs' license after they failed to pay the Fee on Cabin #3. Either way, it fails under *Penn Central*. The Fee itself is not insignificant, but by Plaintiffs' own allegations it is less than six percent of their revenues. Doc. 1 at 9. Nor can there be legitimate investment-backed expectations that a fee of that amount will not be imposed. And imposition of taxes and fees is hardly an unusual form of government action. While it is, as they say, "an additional burden to the profitability of their business," Doc. 16 at 18, 21, Plaintiffs point to no precedent suggesting that a six-percent fee or tax could amount to a *Penn Central* taking, and I am unaware of any.

To the extent the claim is about the revocation of the license for Cabin #3, that fails because plaintiffs could have avoided that action simply by paying the fee. Revocation of a license for failure to pay a

**EXHIBIT 1**

required fee is not unusual and should not be unexpected. As Plaintiffs themselves note, they "actually did not believe they would be free from future regulation but, instead, felt they would be free from unreasonable legislation, which is the case with the Impact Fee." Doc. 16 at 19. As explained above, the Impact Fee is not constitutionally unreasonable, so this claim fails by its own terms. Even if a flat ban on rentals for less than thirty days could amount to a taking (a dubious proposition, at least under current law), that is not what happened here. What happened here was a failure to pay a mandatory licensing fee. That is not a taking under *Penn Central*.

### B. Claims 5 and 6: Due Process

As already lamented above, Plaintiffs' claims 5 and 6 are something of an omelet combining their objections to the financial burdens of the Impact Fee, the alleged irrationality of the ordinance, and to having been treated differently than others similarly situated. *See* Doc. 16 at 21. Despite Plaintiffs' labeling of them, none of these sorts of grievances sound in Substantive Due Process, and all of them have been addressed above. Nor do Plaintiffs point to any cases supporting the proposition that a land-use licensing regulation of this sort is a Substantive Due Process violation.

To the extent an actual Due Process claim might be gleaned from the complaint, it would seem to be a *procedural* Due Process issue based on the Town's revocation of the Cabin #3 license without a chance for a hearing or an appeal: "Plaintiffs had the expectation that they would have the chance to contest the ordinance after it became effective in 2023 and request a hearing to argue that it was invalid or, in the alternative, that the exemption applied to them. It was not foreseeable that they would not have a chance to argue their case in a hearing under both

- 10 -

**EXHIBIT 1**

theories." Doc. 16 at 23.[3] But unlike the typical town registration and fee code, the Estes Park Municipal Code regards an improperly renewed vacation home annual license as automatically "expired and terminated without any further action necessary by the Town." Title 5.20.110(d)(1).

But this claim would fail too, even if it had been properly presented by Plaintiffs. "The essence of procedural due process is the provision to the affected party of some kind of notice and ... some kind of hearing." *Moore v. Bd. of Cty. Comm'rs*, 507 F.3d 1257, 1259 (10th Cir. 2007) (internal quotation marks omitted). But this only applies when the government has taken action to deprive the plaintiff of a liberty or property interest. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) ("We examine procedural due process questions in two steps: the first asks whether there exists which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.) (citation omitted). I presume Plaintiffs' short-term rental license would qualify as a property interest. But contrary to their characterization, it was not "revoked." Their 2022 license *expired* and they failed, by their own admissions, to take the actions necessary to get a renewed license for 2023. See Doc. 1 at 33 ("Title 5, as amended, requires payment of an Impact Fee and Vacation Home Rental License fee yearly . . ."). Plaintiffs did not have a property interest in a 2023 license, so there was nothing to revoke. *See id.* at 12 ("Plaintiffs paid the Vacation Home License fee for Cabin #3 ($250) but did not pay the Impact

---

[3] Plaintiffs also assert that the revocation was "punitive." Doc. 16 at 22; Doc. 1 at 30, 33. This is a conclusory statement with no factual allegations to support it and thus need not be credited. *See Twombly*. In any event, allegations of retaliation for Plaintiffs' opposition to the ordinance (which is what this seems to allude to) would sound in the First Amendment, see *Irizarry v. Yehia*, 38 F.4th 1282, 1288 (10th Cir. 2022), and Plaintiffs have brought no such claim.

**EXHIBIT 1**

Fee $1,390 and requested a fair hearing and due process."). There was no violation of the Due Process Clause.

### III.    Claim 7: Commerce Clause

Plaintiffs' Commerce Clause claim is also not as clear as it might be, but appears to be based on the idea that by forcing Plaintiffs to cancel particular reservations made by out-of-state tourists in 2023, the Town violated the Dormant Commerce Clause. See Doc. 1 at 33, Doc. 16 at 11, 22-25. But even if it were true that the Town forced Plaintiffs to cancel out-of-state tourists' reservations (*but see* Section II.B. above), that is not the sort of imposition on interstate commerce that triggers even the most expansive reading of the Dormant Commerce Clause.

Claims of this sort are analyzed under the "undue burden" test of *Pike v. Bruce Church*, 397 U.S. 137 (1970). Under that test, a law will be invalidated only if its burden on interstate commerce is "clearly excessive in relation to the putative local benefits." *Id.* at 142. Courts will uphold the challenged regulation "if it serves a 'legitimate public interest,' its effects on interstate commerce are only 'incidental,' and the burden imposed on interstate commerce is not 'clearly excessive in relation to the putative local benefits.'" *Am. Target Adver., Inc. v. Giani*, 199 F.3d 1241, 1254 (10th Cir. 2000) (citations omitted). This is not a difficult test for governments to pass: as the Supreme Court has recognized, "[s]tate laws frequently survive this *Pike* scrutiny…" *Dept. of Revenue of Ky. v. Davis*, 553 U.S. 328, 339 (2008).

Here, the challenged regulation serves various legitimate purposes. And to the extent that the Impact Fee makes it less likely that some properties will be rented to out-of-state travelers, that is an incidental burden that is not clearly excessive. Plaintiffs may have had to cancel some interstate reservations and not take others after their 2023 license

**EXHIBIT 1**

on Cabin 3 was not renewed for failure to pay the Fee, but that too is incidental. This claim is dismissed.

### IV.   Claim 8: Contracts Clause

Plaintiffs' Eighth Claim is that the Town violated the Contracts Clause of the United States Constitution, which provides that "[no] state shall . . . pass any . . . law impairing the obligation of contracts." U.S. Const., art 1, § 10. As Defendant points out, the response brief stops after attempting to defend Claim 7, so this claim might be considered forfeited. But, as Defendant also points out, most of the arguments put forward by Plaintiffs as to Claim 7 actually seem more applicable to the Contracts Clause than the Commerce Clause, so I will address them here.

The allegations underlying this claim relate to reservations for Cabin #3 that Plaintiffs have had to cancel and now cannot book. *See* Doc. 1 at 35. To the extent the claim is based on future reservations that were not booked at the time the law went into effect (or Plaintiffs' license expired), they cannot support a Contracts Clause claim. That clause only applies to interference with existing contracts. *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992).

As to existing contracts, Plaintiffs point to two types: short-term rental customers who had booked Cabin #3 and the Town itself through building permits and licenses. This latter category are not contracts, however, and thus cannot support this claim (even if they had been properly pled). *See, e.g., Patzer v. City of Loveland*, 80 P.3d 908, 911 (Colo. App. 2003) ("the issuance of a building permit is an exercise of the City's police powers . . .). The former may qualify as contracts, and Plaintiffs may have pled one instance of such a booking that had to be canceled after they lost their license. *See* Doc. 16 at 23 ("the immediate revocation of their license was a substantial impairment of their ability to

- 13 -

**EXHIBIT 1**

perform under the contract with this guest"). The forced cancellation of reservations would amount to a substantial burden on those contractual relationships, but this claim still fails because the Town has a variety of legitimate and substantial interests in imposing and collecting the fee (and not renewing licenses of those who choose not to pay). *See Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 401 (1983) (Contracts Clause claim requires showing that the "law has, in fact, operated as a substantial impairment of a contractual relationship," and if so, the municipality "must have a significant and legitimate public purpose supporting the regulation").

## CONCLUSION

It is **ORDERED** that:

The Defendant's Motion to Dismiss, **Doc. 13**, is **GRANTED**; and Plaintiffs' federal claims are **DISMISSED** with prejudice.

DATED: February 6, 2024         BY THE COURT:

~~Daniel~~ D. Domenico
United States District Judge

- 14 -

**EXHIBIT 1**