IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 23-cv-02057-GPG-SBP

TODD RUELLE,
SUMMIT COUNTY RESORT HOMES INC.,

    Plaintiffs,

v.

SUMMIT COUNTY BOARD OF COUNTY COMMISSIONERS,

    Defendant.

---

# ORDER

---

Before the Court is Defendant's Motion to Dismiss (D. 21). The Court GRANTS the motion for the following reasons.

## I. FACTS

This civil action challenges the constitutionality of Summit County's Ordinance No. 20, as amended in Ordinance 20-C (D. 1-1; D. 1-2; D. 1-3).[1] Due to the ever-increasing housing shortage that affects many mountain towns in Colorado, the Summit County Board of County Commissioners enacted a series of regulations and a licensing program regarding residential owners who rent their properties as short-term rentals (STRs) for less than thirty-day increments. Generally, the Ordinance divides the County into two zones: (1) the Resort Overlay Zone (ROZ) and the Neighborhood Overlay Zone (NOZ). The Ordinance also maintains two types of licenses

---

[1] The Court draws the operative facts from Plaintiff's Complaint for Declaratory and Injunctive Relief (D. 1).

1

for the NOZ (D. 1-3 at 7). The Type I license requires a member of the local workforce, as a Qualified Occupant,[2] to live at the STR property at least nine months out of twelve and may rent out a portion of the residence or live in an accessory dwelling unit on the property (*id*. at 7-8). The property owner must be the licensee but does not need to be the qualified occupant (*id*.). The Ordinance does not limit the number of available Type I STR licenses in the NOZ. Conversely, the Type II license does not specify any limitation on the resident or require a Qualified Occupant. The Type II license is subject to strict distribution caps and the licenses are subject to a further limitation to four land use basins within Summit County: (1) the Lower Blue Basin (550); (2) the Snake River Basin (130); (3) the Ten Mile Basin (20); and (4) the Upper Blue Basin (590) (*id.* at 8-9). Invariably, the cap on the quantity of Type II licenses typically forces owners to seek Type I licenses and comply with the qualified occupant requirements. There are no caps on the number of licenses available in the ROZ.

The dispute in this case pertains primarily to the Type I licenses for the NOZ and secondarily to the licensing schemes under the ROZ and NOZ Type II. Plaintiff raises nine claims for relief: (1) violation of the Equal Protection Clause of the Fourteenth Amendment via 42 U.S.C. § 1983 as it pertains to different licensing schemes for properties in the ROZ versus the NOZ; (2) violation of the Equal Protection Clause of the Fourteenth Amendment via 42 U.S.C. § 1983

---

[2] A Qualified Occupant is defined as "a person 18 years of age or older, along with his or her Dependents, if any, who at all times during ownership or occupancy of the Unit, resides and is employed within the County [year-round], an average of at least 30 hours per week on an annual basis" (D. 1-3 at 4). The Qualified Occupant may earn a living from a business or organization that operates in and serves Summit County, work in the County at a business or organization averaging thirty hours per week on an annual basis, be self-employed or work from home at least thirty hours a week on an annual basis and be physically present within the County, or "be authorized to retire if the person is at or above the full benefit age for federal Social Security, has worked in Summit County an average of at least 30 hours per week on an annual basis for at least 10 continuous years prior to retirement" or be partially retired and averaging a minimum of fifteen hours per week on an annual basis if the occupant has worked in Summit County an average of at least 30 hours per week on an annual basis for at least 15 continuous years prior to partial retirement" (*id*.).

as it pertains to the NOZ Type I licensing requirements and qualified occupants and retirees; (3) violation of the dormant Commerce Clause via 42 U.S.C. § 1983; (4) violation of the Substantive Due Process Clause via 42 U.S.C. § 1983; (5) violation of the Substantive Due Process clause of the Colorado Constitution, Article II, Section 3; (6) violation of Colorado Revised Statute § 30-28-120(1) as it pertains to the Ordinance's limitations on the number of bookings an STR owner can accept; (7) violation of Colorado Revised Statute § 30-28-120(1) as it pertains to the Ordinance's prohibition on the transfer of STR licenses upon the sale of a property between an unrelated seller and buyer within unincorporated Summit County; (8) violation of Colorado Revised Statute § 38-1-101(3)(a) as it pertains to the STR license caps for Type II licenses under Ordinance 20-C and the prohibition of STR licenses upon the sale of a property in the NOZ areas of unincorporated Summit County; (9) violation of Colorado Revised Statute § 38-1-101(3)(a) as it pertains to Ordinance 20-C's imposition of the limitation of thirty-five STR bookings per year for each property within the NOZ. (D. 1 at 31-41). Plaintiffs are moving for declarative relief, injunctive relief, and an award of reasonable expenses, attorneys' fees, and costs under 42 U.S.C. § 1988.

In the instant motion to dismiss, Defendant moves the Court to dismiss Plaintiffs' claims arising under federal law due to failure to state a claim and decline to exercise supplemental jurisdiction over the Colorado state law claims (D. 21 at 3). The Court heard oral argument on Defendant's partial motion to dismiss on April 17, 2024 (D. 41, D. 42).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, the complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

### III. ANALYSIS

**A. Standing**

"[A] court must raise the standing issue sua sponte, if necessary, in order to determine if it has jurisdiction." *United States v. Colorado Supreme Ct.*, 87 F.3d 1161, 1166 (10th Cir. 1996). "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient

allegations of standing." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005). Standing jurisprudence has two categories: (1) Article III (which enforces the case or controversy requirement of the United States Constitution) and (2) prudential (a "judicially self-imposed limit[] on the exercise of federal jurisdiction"). *Wilderness Soc'y. v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011). Standing under Article III is a threshold issue that must be addressed before the putative plaintiff can litigate their claims in federal court. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475–76 (1982). To establish Article III standing, a plaintiff must allege that:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). At the preliminary injunction stage of the litigation, a plaintiff must make a "clear showing" that they have standing and are "entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); s*ee also Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1185 (10th Cir. 2013) (Matheson, J., concurring).

### 1. *Individual standing*

To the extent that an individual plaintiff is seeking prospective injunctive relief, the individual plaintiff "generally has standing if he or she alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder[,]" even if a plaintiff has not been prosecuted or threatened with prosecution. *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003) (internal

quotations and citations omitted). The threatened injury, however, must be a "real and immediate threat of being injured in the future[,]" which means it must be "certainly impending and not merely speculative." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). An alleged injury that is "contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction." *Id.* at 1283–84.

Here, the individual plaintiff in the instant case is Mr. Ruelle. Mr. Ruelle, a Director and President of Summit County Resort Homes Inc. (SCRH), is a homeowner in unincorporated Summit County who bought his home on October 10, 1980 (D. 1 at 3).[3] Plaintiffs only allege that Mr. Ruelle has regularly rented his home as an STR since 1990 and has an average of 65 STR bookings each year (*id.*). Mr. Ruelle's home is located in the NOZ and therefore is subject to the booking limitations imposed in Ordinances 20-B and 20-C (*id.* at 32). Accordingly, Mr. Ruelle has standing to challenge the booking limitations under the claims that it violates the Equal Protection Clause and his right to substantive due process.

### 2. Organizational standing

The Court utilizes the same inquiry when analyzing an organization's standing under Article III. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982). An organization can establish an injury in fact if there is a "concrete and demonstrable injury to the organization's activities . . . with the consequent drain on the organization's resources" that results in an impairment to the organization's ability to fulfill an essential function, purpose, or goal. *Id.* at 379. An organization has standing to bring suit on behalf of its members "when its members would have standing to sue in their own right, the interests at stake are germane to the organization's

---

[3] Plaintiffs do not indicate where in Summit County Mr. Ruelle's property is located.

purpose, and neither the claim asserted nor the relief requested requires individual members' participation in the lawsuit." *Friends of the Earth, Inc.*, 528 U.S. at 169. In this instance, the organization must "identify members who have suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

The organizational plaintiff in the instant case is SCRH, a Colorado nonprofit corporation with its principal place of business in Breckenridge (*id.* at 4). SCRH claims it has Article III standing to assert claims on behalf of its eighty-nine members and other similarly situated residential property owners in the County because (1) "its members own property in unincorporated Summit County that they currently rent, or wish to rent, as STRs"; (2) "the County's STR regulations are germane to SCRH's purpose"; and (3) "the claims SCRH asserts and the relief requested do not require the participation of individual members." SCRH lists the following members as pertinent to the Complaint, which this Court finds satisfies its Article III burden to establish standing:

1. Mark Mason is a Director and Secretary of SCRH and has owned a property in unincorporated Summit County since the fall of 2005 and has been renting it as an STR since 2008 (D. 1 at 4).

2. Richard Mason is SCRH's third Director and current Treasurer and owns two homes in unincorporated Summit County, which were built in 2000 and 2019. Richard Mason began renting his primary residence as an STR in 2016 and the second residence in 2019 (*id.* at 4-5).

3. Mr. Greg Gutzki is a SCRH member and has been a Summit County resident since 1973. Mr. Gutzki owns a home in the Upper Blue Basin and has lived at this residence for at least nine months of the year. He does not currently use the property as an STR but potentially desires to use his home as an STR in the future. The Upper Blue Basin has been designated by the County as in the NOZ. Plaintiffs allege that Mr. Gutzki applied for a Type II license but that the County is no longer accepting applications for Type II licenses. Plaintiffs further allege that Mr. Gutzki is allegedly ineligible

to apply for a Type I license because he is retired and does not meet the criteria of a Qualified Occupant (*id.* at 18-19).

4. Rick Davis is a SCRH member and an out-of-state resident who resides in Texas but spends four months of the year in Summit County. Mr. Davis purchased his Wildernest property (located in the NOZ) in March 2022. Plaintiffs allege that the County denied Mr. Davis' application for an STR license and he has resorted to renting the property as a long-term rental (*id.* at 19-20).

5. Stephen and Lisa Wright are SCRH members and primarily reside in Arvada, Colorado. They purchased a property in Peak Seven in April 2022 and intended to rent it as an STR (*id.* at 20-21). The prior property owners had an STR license, but the County's regulations prohibit the transfer of that license with the property. Plaintiffs allege that the County told the Wrights not to apply for an STR license because they would not be approved.

6. Tommy Jefferies, a SCRH member, rented a home in the Silver Shekel area, which is in the NOZ. Mr. Jefferies then purchased this home in 2017 and rents his spare rooms as STRs. Mr. Jefferies had between 216 to 254 bookings between 2020 to 2022 (*id.* at 21).

**B. Federal Claims**

*1. Equal Protection Clause of the Fourteenth Amendment (Claims 1 and 2)*

The Equal Protection Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (internal quotations omitted). Conversely, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Id.* "If strict scrutiny applies, Colorado's statute must be narrowly tailored to further a compelling government interest." *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002) (internal citations and quotation omitted). "If no heightened scrutiny applies, the statute need only be rationally related to a legitimate government

purpose." *Id*. Plaintiffs concede that rational basis review is applicable, and the Court does not find that the Ordinance targets a suspect class or involves a fundamental right. *See Goetz v. Glickman*, 149 F.3d 1131, 1140 (10th Cir. 1998).

Under a rational-basis review, the Ordinance "need only bear a rational relation to some legitimate end to satisfy the Equal Protection Clause." *Kinnell v. Graves*, 265 F.3d 1125, 1128 (10th Cir. 2001) (citation and internal quotations omitted). To state a valid equal protection claim, therefore, Plaintiffs must "allege facts sufficient to establish that [they are] similarly situated" to other property owners in Summit County who have received STR licenses. *Crider v. Bd. of Cnty. Comm'rs of Cnty. of Boulder*, 246 F.3d 1285, 1288 (10th Cir. 2001). Generally, the County must treat "like cases alike" but the Court will not interfere if the County treats "unlike cases accordingly." *Id.*; *see also Save Palisade FruitLands*, 279 F.3d at 1213.

*i. Different licensing schemes for properties in the ROZ versus the NOZ*

Plaintiffs argue that they have sufficiently alleged facts that establish that the property owners in the NOZ and ROZ are similarly situated but treated differently under the Ordinance and that the Ordinance arbitrarily distinguishes between the two types of property owners. (D. 27 at 5-6). The Court reviewed the ROZ maps attached to the Complaint (D. 1-3 at 20-23). Plaintiffs allege in the Complaint:

> Those property owners who happen to have bought in what the BOCC is now labeling a "Resort Overlay Zone" may keep renting their homes as they like. Yet homeowners in the "Neighborhood Overlay Zone" are enlisted in the County's misguided attempt to subsidize housing affordability through the BOCC's regulations limiting the uses of their properties . . . Plaintiff SCRH's members own properties in the NOZ that are subject to the STR limits, including the booking limits and STR license caps. Many . . . have historically leased their properties for STRs free from booking limits . . . The BOCC's STR regulations that treat similarly situated property owners

9

> in the NOZ and ROZ areas differently do not substantially advance a
> legitimate governmental interest and are arbitrary and irrational.

(D. 1 at 31-32). In reality, Plaintiffs are challenging the zoning of these two different areas (i.e., resort versus residential). "The enactment of zoning ordinances is a legitimate police power of local governments." *Colorado Manufactured Hous. Ass'n v. City of Salida, Colo.*, 977 F. Supp. 1080, 1084 (D. Colo. 1997). Defendant argues that there is no disparate treatment because all property owners in their respective zones are treated similarly and that they cannot show disparate treatment between the zones as the properties sit in different parts of the County—the ROZ areas are generally adjacent to ski resorts and RV parks, whereas the County is attempting to preserve neighborhoods in the NOZ (D. 31 at 2-3). Plaintiffs failed to allege that there is no rational basis for the zoning and the Court finds that the County may treat the two zones differently. Indeed, the "[r]ational-basis review simply does not give courts the option to speculate as to whether some other scheme could have better regulated the evils in question." *Grigsby v. Estes Park*, 23-CV-1349-DDD-SBP (D. Colo. Feb. 6, 2024) (unpublished) (citing *Mourning v. Fam. Publications Serv., Inc.*, 411 U.S. 356, 378 (1973)).

### ii. NOZ Type I licensing requirements for Qualified Occupants and retirees

Plaintiffs next argue: (1) the Type I NOZ licensing requirements violate the Equal Protection Clause because "[a] homeowner in the NOZ who receives Qualified Occupant status for their property under the BOCC's definition is not subject to the STR license caps, while a homeowner who does not is subject to the caps and thus is ineligible for an STR license"; and (2) that the residents "receive disparate treatment merely based on the employer for whom they work or whether they have been able to retire" (D. 1 at 33). Plaintiffs appear to abandon the first argument and only argued in the Response that the STR regulations arbitrarily distinguish between

similar retirees (D. 27 at 6-7). Accordingly, the Court considers the first argument conceded and this will be dismissed under Rule 12(b)(6).

Regarding the second argument, Plaintiffs argue that the Ordinance "arbitrarily distinguishes between those who already retired and those who retire in the future" (D. 27 at 7). Plaintiffs assert that Mr. Gutzki, as a retiree who worked in Summit County, is ineligible to receive a Type I NOZ license (D. 1 at 18-19). The Court finds Plaintiffs' interpretation of the Ordinance to be a misreading of the plain language and a possible red herring.[4] Under Ordinance 20-C, "Qualified Occupants may be authorized to retire if the person is at or above the full benefit age for federal Social Security, has worked in Summit County an average of at least 30 hours per week on an annual basis for at least 10 continuous years prior to retirement" (D. 1-3 at 4). A court is obligated to examine the plain language of a statute or regulation, and if the language is clear on its face, the court may end its analysis. *Obduskey v. Wells Fargo*, 879 F.3d 1216, 1220-21 (10th Cir. 2018), *aff'd sub nom. Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466 (2019); *see also Brookshire Downs at Heatherridge Condo. Ass'n, Inc. v. Owners Ins. Co.*, 324 F. Supp. 3d 1201, 1205 (D. Colo. 2018) ("Under Colorado law, [i]f the plain language of the statute is clear and unambiguous, [a court must] interpret the statute according to its plain meaning." (citation and internal quotations omitted)). Under Colorado law, a court must construe the regulation "so as to avoid questions of their constitutional validity" and eschew statutory constructions that lead to

---

[4] During oral argument, the Court posed to the parties a hypothetical where a forty-year-old person who owned a property in the NOZ (either inheriting money or being independently wealthy) wanted to retire and serve as the Qualified Occupant. Neither party was able to adequately respond on this issue and Defendant deferred to answer as Plaintiffs had not raised the issue in the Complaint (*see* D. 42 at 5-6). There may be potential legal issues regarding retirees under the retirement age for federal Social Security or individuals working from home in the County for remote employers who do not have a business that is located within or serves Summit County (e.g., large corporations or the federal government). Because these issues were not briefed and Plaintiffs do not present any party with such an injury to establish standing, however, the Court will decline to analyze these topics.

11

absurd or illogical results. *Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004); *Adams Cnty. Sch. Dist. No. 50 v. Heimer*, 919 P.2d 786, 790 (Colo. 1996).

The Court finds that the language of the Ordinance is clear: a retiree may be a qualified occupant and the Ordinance does not preclude someone who has already retired from applying to become a qualified occupant if that individual otherwise meets the requirements. Moreover, it is unclear whether this is an actual controversy that this Court needs to resolve. The Complaint is devoid of information regarding whether Mr. Gutzki attempted to apply for a Type I license and was denied due to his retirement status. Rather, the Complaint notes that he "wants but cannot get an STR license for his NOZ home" because he is already retired (D. 27 at 7). This Court will not read into the Ordinance the additional requirement that, in order to apply to be a retired Qualified Occupant, a person must currently be working and planning to retire rather than already be retired. Defendant has clearly disavowed this interpretation of the statute and asserts that the Ordinance allows both the already retired and the currently working individuals an equal opportunity to be a Qualified Occupant and to apply for a Type I license (*see* D. 31 at 4-5). Should that interpretation of the statute not be implemented by the County, Plaintiffs may raise a claim in the future. Accordingly, these claims are dismissed.

    2. *Dormant Commerce Clause (Claim 3)*

Plaintiffs next allege that the Ordinance violates the dormant Commerce Clause because "Ordinance 20-C's definition of a Qualified Occupant, together with the license caps[5] per basin imposed on Type II licenses in the NOZ, burden interstate commerce and discriminate against out-

---

[5] Plaintiffs did not argue in their Response that the rental caps alone burden interstate commerce via the dormant Commerce Clause, thus the Court will not address it.

of-state economic interests" (D. 1 at 33-34). Specifically, Plaintiffs contend that because only in-state residents can be Qualified Occupants, they are the only individuals who can rent STRs under a Type I license, thereby preventing out-of-state residents from getting a Type I license to operate STRs in the NOZ (*id.*).

A regulation, even if it is not discriminatory, may violate the dormant Commerce Clause if "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). The Court must balance four factors: "(1) the nature of the putative local benefits advanced by the [statute or regulation]; (2) the burden the [statute or regulation] imposes on interstate commerce; (3) whether the burden is clearly excessive in relation to the local benefits; and (4) whether the local interests can be promoted as well with a lesser impact on interstate commerce." *Johnson & Johnson Vision Care, Inc. v. Reyes*, 665 F. App'x 736, 744 (10th Cir. 2016) (internal quotations and citations omitted). Plaintiffs bear the burden of establishing that the Ordinance fails the *Pike* balancing test. *Id.* Under the *Pike* balancing test, the Court focuses on "the overall benefits and burdens that the statutory provision may create, not on the benefits and burdens with respect to a particular company or transaction." *Quik Payday, Inc. v. Stork*, 549 F.3d 1302, 1309 (10th Cir. 2008). A court must uphold the regulation if "it serves a legitimate public interest, its effects on interstate commerce are only incidental, and the burden imposed on interstate commerce is not clearly excessive in relation to the putative local benefits." *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1254 (10th Cir. 2000) (internal quotations and citation omitted). Applying the *Pike* factors, the Court does not find that the Ordinance burdens interstate commerce. *See Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 339 (2008) ("State laws frequently survive this *Pike* scrutiny . . . .") (listing cases).

Plaintiffs rely upon *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 326 (5th Cir. 2022) for the proposition that "when a regulation's 'upshot is that only [Qualified Occupants] of the [County] may enter the market for STRs,' that regulation violates the dormant Commerce Clause." This is not what the U.S. Court of Appeals for the Fifth Circuit held. Instead, the Fifth Circuit determined that the state's residency requirement to participate in the STR market discriminated against interstate commerce because it prevented out-of-state property owners "from participating altogether" because the municipality would not offer permits for STRs in residential neighborhoods unless the STR was the owner's primary residence, and the owner had a homestead exemption for the property. *Id.* Specifically, the Fifth Circuit noted that the Ninth Circuit's decision in *Rosenblatt v. City of Santa Monica*, 940 F.3d 439 (9th Cir. 2019) was inapposite because "[t]hat case upheld an STR regulation requiring someone to live on the property full time, but that person did not need to be the owner of the property . . . Thus, the challenged regulation permitted out-of-staters to enter Santa Monica's STR market on equal terms as residents." *Id.* at 326 n.16. The Court finds that *Hignell* is factually distinct from the instant case and relies upon *Rosenblatt*. Indeed, the Ninth Circuit clearly held that a primary resident requirement for STRs in Santa Monica did not violate the dormant Commerce Clause:

> Contrary to Rosenblatt's characterization, the ordinance does not require the primary resident in the dwelling to be the owner of the dwelling. Moreover, Rosenblatt does not explain how the ordinance would prevent an out-of-state homeowner who owns property in Santa Monica from being able to extract economic value from the property. For example, the out-of-state owner could rent out the property on a long-term basis with a condition that one of the rooms be used for the owner's short-term rentals. Or the owner could expressly allow the long-term renter to sublet a room on a short-term basis in exchange for paying a higher monthly rent. The ordinance also applies equally to owners who reside in Santa Monica, or elsewhere in California, but at a property separate from their rental property. Accordingly, the complaint fails to plausibly allege that the home-sharing

> exception obviously advantages Santa Monica residents at the expense of out-of-state homeowners.
>
> [. . .]
>
> Santa Monica's ordinance does not prohibit out-of-state property owners from home sharing in their out-of-state homes, nor does it prohibit them from allowing home sharing in their Santa Monica properties. While non-resident property owners cannot personally serve as the primary resident whose presence is required during the home share, that is because they are not similarly situated to the Santa Monica residents who can.

*Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 450–51 (9th Cir. 2019); *see also MDKC, LLC v. City of Kansas City*, No. 4:23-CV-00395-DGK, 2023 WL 6406403, at *7 (W.D. Mo. Oct. 2, 2023) (noting that the ordinance at issue did not discriminate against interstate commerce because it did not require the primary resident in the dwelling to be the owner of the dwelling).

In the Ordinance at issue, a Qualified Occupant is defined as "a person 18 years of age or older, along with his or her Dependents, if any, who at all times during ownership or occupancy of the Unit, resides and is employed within the County [year-round], an average of at least 30 hours per week on an annual basis" (D. 1-3 at 4). Plaintiffs fail to allege the putative local benefit advanced by the Ordinance, that the Ordinance unduly burdens interstate commerce, or even what burden is imposed upon interstate commerce by the Qualified Occupant requirement. Based on the plain language of the Ordinance (i.e., ownership or occupancy of the Unit), if the out-of-state property owner cannot act as the Qualified Occupant, they may designate another resident in the County who is over the age of eighteen and residing at the property as the Qualified Occupant. As long as there is a Qualified Occupant, an out-of-state resident may obtain a Type I license and rent the property as an STR. This Ordinance applies equally to property owners outside of the County, outside Colorado, and to residents of the County. Indeed, Tommy Jefferies lives in the County at

his property and rents out his extra rooms as STRs. Conversely, Stephen and Lisa Wright primarily reside in Arvada, Colorado, and wish to use their property in Summit County as an STR. Similarly, Rick Davis, who resides in Texas, rents his property as a long-term rental rather than an STR but would prefer to use it as an STR. Because the Wrights and Mr. Davis do not reside within the County for nine months out of the year, they would need to obtain a Qualified Occupant for a Type I license or obtain a Type II license. *See, e.g., Rosenblatt*, 940 F.3d at 450–51. Plaintiffs cannot establish that the Ordinance burdens interstate commerce or violates the dormant Commerce Clause; accordingly, the Court does not need to examine the remainder of the *Pike* balancing test. Ultimately, this claim fails as a matter of law.

### 3. *Substantive Due Process Clause (Claim 4)*

Plaintiffs next argue that Defendant violates their Substantive Due Process rights under the Fourteenth Amendment because they are deprived of property without due process of law (D. 1 at 35-36). Plaintiffs argue that they have a property right in the land to both use the property and lease it (*id*.). Ergo, by capping the number of bookings at thirty-five, the property owner's "fundamental right to rent private property" is infringed (*id*.). There are two types of substantive due process claims: (1) government infringement upon a fundamental right and (2) governmental action that arbitrarily deprives a plaintiff of life, liberty, or property in a manner that shocks the judicial conscience. *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018). The U.S. Court of Appeals for the Tenth Circuit has clarified that the court must "apply the fundamental-rights approach when the plaintiff challenges *legislative action*, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious *executive action*." *Id.* As Plaintiffs are challenging the

Ordinance and not an action taken by a specific government officer, the Court applies the fundamental-rights approach.

The Court examines the fundamental-rights approach in three steps: (1) "whether a fundamental right is at stake either because the Supreme Court or the Tenth Circuit has already determined that it exists or because the right . . . is one that is objectively among those 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty' such that it is 'fundamental'"; (2) "whether the claimed right—fundamental or not—has been infringed through either total prohibition or 'direct[ ] and substantial[ ]' interference"; and (3) "if the right infringed is a fundamental right, the court must determine whether the government has met its burden to show that the law or government action interfering with the right is narrowly tailored to achieve a compelling government purpose." *Abdi v. Wray*, 942 F.3d 1019, 1028 (10th Cir. 2019). "In municipal land use regulation cases such as this, the entitlement analysis presents a question of law and focuses on whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs." *Van Sant & Co. v. Town of Calhan*, 83 F.4th 1254, 1277 (10th Cir. 2023), *cert. denied sub nom. Van Sant & Co. v. Town of Calhan, Colorado*, 144 S. Ct. 1060 (2024) (internal quotations and citation omitted). "The entitlement analysis centers on the degree of discretion given the decisionmaker and not on the probability of the decision's favorable outcome." *Id*.

Here, Plaintiffs have not established that the right to rent one's property is a fundamental right and concede that they do not have a fundamental right to an STR license (*see* D. 27 at 10-12). Because Plaintiffs failed to establish the existence of a fundamental right to rent property, this Court applies only rational basis review to the Ordinance. *Van Sant*, 83 F.4th at 1279. Under

a rational basis review, a local ordinance "must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (internal quotations and citation omitted). As previously noted supra, the Court found that the County provided a sufficient rational basis for the Ordinance; therefore, this claim must be dismissed. *See id.* at 1282 (noting that substantive due process analysis and equal protection analysis "proceed along the same lines," and in most cases, the analysis for one claim "sufficiently addresses both claims.").

### C. Colorado State Law Claims

The Court has disposed of all of Plaintiffs' federal law claims, over which this Court has original subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. All the remaining claims are brought under state law, which implicates this Court's supplemental subject-matter jurisdiction under 28 U.S.C. § 1367. Under 28 U.S.C. § 1367(c)(3), when all the "federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998). Accordingly, the Court dismisses the remaining state-law claims without prejudice for lack of subject-matter jurisdiction.

### IV. CONCLUSION

This Court is aware of the significant consequences of the Ordinance and this Order for property owners, residents, and visitors to Summit County—and perhaps in similar communities across Colorado. Plaintiffs in this civil action undoubtedly participated in the political and legislative process to the fullest extent allowable by attending meetings, objecting to the proposed language in the Ordinance, and ultimately litigating the issue before this Court. Their grievances, concerns, and the potential financial repercussions of the Ordinance are valid. It is important to clearly denote the role of this Court, which does not include second-guessing the legislative

process or creating policy. Rather, this Court must determine the constitutionality and legality of the Ordinance—nothing more and nothing less. As the U.S. Supreme Court has previously noted:

> If the municipal council deemed any of the reasons which have been suggested, or any other substantial reason, a sufficient reason for adopting the ordinance in question, it is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballot-not the courts.

*Vill. of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 393 (1926).

Accordingly, Defendant's motion to dismiss (D. 21) is GRANTED. It is FURTHER ORDERED that the Clerk of the Court shall close this case

DATED June 25, 2024.

BY THE COURT:

Gordon P. Gallagher
United States District Judge